## SMITH vs. THE STATE OF GEORGIA.

Where the evidence is circumstantial, and not plainly insufficient, the verdict should stand. Weighing the evidence and finding the truth in an obscure or doubtful case, is work that can usually be well done, *best done*, by a jury of the vicinage.

Criminal law. New trial. Before Judge HILLYER. Fulton Superior Court. October Term, 1878.

Smith was placed on trial for the murder of Skinner, alleged to have been committed on the fourth of July, 1878. He pleaded not guilty. The evidence was circumstantial. The case made for the state was, in brief, this:

A party of seventy-five to eighty persons were congregated on the evening and night of July 4th, 1878, at Silver Spring, a place of public resort near the termination of the Peachtree street-car line, leading from the city of Atlanta to Ponce de Leon spring. Silver Spring was composed of a bar-room and dancing platform, both of which were lighted, after dark, by lamps. On this particular evening some little dancing was done, and a great deal of drinking. Amongst the persons present were the deceased, defendant, Evans, Mattie Woods, Franklin, and his sister Nannie All of these were drinking, especially the last two. Evans was desirous of separating deceased from Mattie Woods, with whom he was spending most of the time, seated on the dancing platform. He appeared to be averse to entering into a difficulty with him, but exceedingly anxious to precipitate some one else into such a controversy. After approaching one or two on the subject of driving deceased off the platform, who replied that he had best do it himself, he suggested such course to defendant who seemed willing to undertake the job. Defendant was heard to threaten to cut some one's guts out before an hour passed, it being clear that the reference was to deceased. Finally he approached deceased and whispered something in his ear, when the

latter jumped up from his seat by Mattie and moved a few steps on to the platform. The lights were then put out by Evans, and in a moment deceased was found to be mortally cut. Defendant was heard to use insulting language to deceased, and was seen with an open knife in his hand. The latter's reply was fearless, and of a character to provoke a further assault, according to some witnesses; according to others, he stated that he wished to avoid a difficulty there.

The evidence for the defense presented facts tending to show, first, that if he was present at the time the mortal wound was given, he did not inflict it, and secondly, that he was not present at all.

Several witnesses testified that Nannie Franklin was seen in the bar-room, soon after the cutting, with an open knife in each hand, saying that she had cut one man, and was prepared to carve another. It was shown that earlier in the evening some one had stuck his finger in her eye, which had incensed her much. There was some evidence to show that this was deceased, but possibly the preponderance tended to establish the fact that it was some one else. Whoever it was, incurred also the anger of her brother, who, indignant in his sister's behalf, and inflamed with drink, was ready to whip anybody present. On the next morning, at the breakfast table, both the brother and the sister were shown to have been desirous of claiming the credit of having done the cutting, but it would seem that this was more in a spirit of braggadocio than of truth. It was not then known how serious the matter was. Hence the defendant insisted, with some degree of plausibility, that one of these two did the cutting, probably Nannie.

The difficulty occurred between ten and eleven o'clock. Defendant showed that he left Silver Spring about eight o'clock and went to the Tollesons, at Tight Squeeze, where he spent the night. The Tolleson family, consisting of the mother and two daughters, made out an apparent case of *alibi* by swearing that he arrived at their house between

eight and nine o'clock and spent the night there.   These persons were corroborated strongly by one witness who also enjoyed their hospitality on that evening, and weakly by another.

The prosecution attacked their testimony by showing that defendant had had a child by Mrs. Tolleson's third daughter, and had promised to marry her when he was extricated from his present trouble.   Their testimony was also shaken by proof of the falsity of certain collateral facts sworn to by them.

The evidence was voluminous and conflicting, but sufficient to sustain the verdict of guilty, which was returned by the jury.   The defendant moved for a new trial because the verdict was contrary to the evidence and the law.   This was overruled and he excepted.

GARTRELL & WRIGHT; GEORGE T. FRY, for plaintiff in error.

B. H. HILL, solicitor-general, for the state.

BLECKLEY, Justice.

That there is some degree of doubt and obscurity as to who was the perpetrator of this homicide is not to be denied.   It is a case on which earnest, thoughtful minds, honestly seeking after truth, might differ.   The evidence is not plainly insufficient to sustain the verdict, and being circumstantial, it was, under the law, for the reasoning powers of a jury, rather than for those of a reviewing court, to work out the conclusion. The weighing of such evidence, especially where it is conflicting, and some of it of doubtful credibility, can be best done by a jury of the vicinage; and what they promulgate by their verdict as the value of the whole, and as the ultimate truth of the matter in controversy, ought to be accepted.   No error of the presiding judge in the course of the trial is complained of.   Only the

inference of the jury from the various proven facts is impeached; and thus we are brought face to face with the solitary question whether we shall overthrow the verdict or sustain it. We do the latter.

Judgment affirmed.