# Commonwealth *v.* Soo Hoo Doo, Appellant.

*Criminal law—Keeping disorderly house—Action of proprietor—Evidence—Indictment.*

1. Under an indictment drawn substantially in the language of the Act of March 31, 1860, sec. 42, P. L. 382, charging the defendant with keeping a disorderly house to the encouragement of idleness, gaming, drinking and other misbehavior, it may be shown (1) that gaming, drinking and other misbehavior occurred with the acquiescence of the proprietor; (2) that the place was kept in such a manner as to encourage such behavior; (3 )that the proprietor participated in the misbehavior; (4) that the misbehavior which was the result of the ill-government of the house was necessarily and directly connected with the offense charged in the indictment; and (5) what was the number and kind of people who visited the house, and what they did when there assembled.

2. Evidence as to the general reputation of a disorderly house upon the trial of an indictment charging the maintenance of such a nuisance is not admissible. The rule is different, however, as to a bawdyhouse.

Argued Oct. 4, 1909. Appeal, No. 13, March T., 1910, by defendant, from judgment of Q. S. Luzerne Co., April T., 1908, No. 116, on verdict for plaintiff in case of Commonwealth v. Soo Hoo Doo. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Indictment for keeping a disorderly house. Before FERRIS, P. J.

The opinion of the Superior Court states the case.

Verdict of guilty, upon which the defendant was sentenced to pay a fine of $250, and undergo an imprisonment for six months.

*Errors assigned* were (1–9) various rulings on evidence, quoting the bill of exceptions; (10–16) various instructions.

*Charles H. Soper,* with him *Samuel S. Herring,* for appellant.—In the case of disorderly houses, particular acts or states of disorder may be put in evidence to prove a house disorderly; but common reputation or complaint among neighbors is not for this purpose admissible: Commonwealth v. Stewart, 1 S. & R. 342; Commonwealth v. Murr, 7 Pa. Superior Ct. 391; State v. Foley, 45 N. H. 466; People v. Mauch, 24 How. Pr. (N. Y.) 276.

*John H. Dando,* assistant district attorney, with him *Abram Salsburg,* district attorney, for appellee.

OPINION BY PORTER, J., December 13, 1909:

The indictment upon which the defendant was tried, charged that: he "did unlawfully keep and maintain a common, ill-governed and disorderly house and place, to the encouragement of idleness, gaming, drinking and other misbehavior, to the common nuisance and disturbance of the neighborhood and orderly citizens, contrary to the form of the act of General Assembly," etc. The indictment was drawn substantially in the language of the Act of March 31, 1860, sec. 42, P. L. 382. That section of the statute did not create a new offense but merely defined a misdemeanor long known to the common law, and fixed the punishment for the same. Under such an indictment it is always competent to show that, with the acquiescence of the proprietor, gaming, drinking and other misbehavior occur and that the place is kept in such a manner as to encourage such behavior. The misbehavior which is encouraged by the keeping of the disorderly place may in itself constitute a crime. When the evidence discloses that the proprietor of the house sometimes participates in the misbehavior, that evidence is not to be excluded upon the ground that it shows an independent offense, for the misdemeanor of keeping a disorderly house is the habitual maintenance of a

place to the encouragement of these very unlawful acts. The misbehavior which is the result of the ill-government of the house is necessarily and directly connected with the offense charged in the indictment. In cases of this kind evidence as to the number and kind of people who visit the house and what they do when there assembled is properly admissible. The first seven specifications of error are dismissed.

The court below permitted counsel for the prosecution to ask witnesses the following questions: "Q. As to the government of the house, the order of the house, encouragement of idleness, gaming, drinking and other misbehavior, what is its reputation, good or bad?" And, "Q. From the speech of the people in that neighborhood what is the reputation of that house along the lines that I have asked you?" Objections to both of these questions were overruled and exceptions noted for the defendant. The evidence admitted under these exceptions was to the effect that the general reputation of the house, with regard to the subject of inquiry, was bad. The admission of this testimony is the subject of the eighth and ninth specifications of error. That evidence as to the general reputation of a disorderly house, upon the trial of an indictment charging the maintenance of such a nuisance, is not admissible was definitely decided in Commonwealth v. Stewart, 1 S. & R. 342, and that rule has not since been modified. The rule is different when the indictment charges the keeping of a bawdyhouse and the reasons for that difference are stated in Commonwealth v. Murr, 7 Pa. Superior Ct. 391. The arguments submitted on behalf of the commonwealth that the testimony in question was elicited in the cross-examination of the witnesses of the defendant and that that cross-examination was rendered proper by the manner in which counsel for the defendant had interrogated those witnesses finds no support in the record. The witnesses had been interrogated in chief as to what they themselves had seen about the house and as to whether they had heard any noises or been disturbed. They had not been asked, in chief, nor had they testified, as to the general reputation of the house in the broad terms of the questions by the prosecution, which elicited the evidence the admission of which

is assigned for error. The eighth and ninth specifications of error are sustained.

While some of the excerpts from the charge, wrested from the context which explained and qualified them, might be the subject of criticism, the charge taken as a whole clearly defined the offense for which the defendant was being tried and fairly stated the facts which it was incumbent upon the commonwealth to establish in order to support the indictment. Upon this branch of the case it seems only necessary to quote that part of the charge which is the subject of the twelfth specification of error: the court said, "If he kept a place which was the familiar resort of prostitutes and male bawds, a place where fighting was of frequent occurrence, a place where people came sober and went away drunk, a place where men came and met prostitutes and took them away in cabs, a place where noises occurred such as to be heard on East Market street, the noises consisting of profane, vulgar and vile language; if you believe that this defendant kept such a place as that, we say to you that under this act of assembly you will be justified in finding a verdict of guilty." The jury were clearly given to understand that they were to find the facts, under the evidence. If they found the facts to be as above stated, then there could be no question that it was for them to say whether the house was disorderly and a nuisance under the act of assembly. If such a state of facts would not justify a finding that the defendant kept a disorderly house, it would be hard to imagine a case in which there could be a conviction upon such a charge. The evidence was certainly sufficient, if believed, to convince a jury beyond all doubt that the defendant so governed his house as to encourage idleness, gaming, drinking and almost all other kinds of misbehavior; that the frequenters of the place very often used profane and vile language in tones so loud as to be plainly audible upon the neighboring streets and that the house was the common meeting place of those engaged in immoral pursuits; an exchange for vice. The request of the defendant for binding instructions was properly refused.

The judgment is reversed with a new venire.