GULLATT *et al.* v. STATE OF GEORGIA, *ex rel.* COLLINS.

No. 7263.    December 11, 1929.

*Lawrence S. Camp, H. A. Allen,* and *W. A. Covington,* for plaintiffs in error.

*Claude C. Smith, solicitor-general,* and *Hooper & Hooper,* contra.

HINES, J.    Gullatt constructed within the limits of Union City an inclosure containing a race-track upon which dogs were run in pursuit of an imitation rabbit run by electricity. There were within the inclosure buildings, offices, and inclosures which were used in the conduct of the business of operating this race-track. These dog races were carried on daily and at night. Police protection of this business was received from the city through its officers, and a daily license fee was assessed thereon by the city in an amount equal to that paid by it to these officers. Three out of the four members constituting the city council were employed in various departments in connection with the races, and daily participated in the conduct of these races. It does not appear that the mayor of the city so participated. The price of ordinary admission to the race track was 50 cents per ticket. Single tickets to the grand stand were sold for the same amount. Gullatt also issued and sold for $2 a grand-stand ticket upon which there were five entrance coupons, which entitled the purchaser to five seats in the grand stand at one performance, or entitled the purchaser to admission to the grand stand upon five separate occasions. Attached to this ticket was a coupon which the holder could exchange for a profit-

sharing certificate, calling for a division in profits from gate receipts in case the dog selected by him was the winner of the race. This coupon was not given to the holder of an ordinary gate ticket, nor to the holder of a single ticket to the grand stand, but only to the purchaser of five grand-stand admissions all of which were upon the same card. Only the holder of one of these profit-sharing coupons, so received in exchange for the coupon attached to the five-seat ticket, was entitled to share in the profits from the races, but he was not then entitled to so share unless he selected the winning dog. The person holding one of these $2 grand-stand tickets, after using one of the coupons thereto attached, was not entitled to participate in the winnings of another contest until he had secured another certificate. This was done by purchasing another grand stand five-seat ticket at the price of $2. For instance if a person desired to bet $10 on any dog, he would have to purchase five of these five-seat grand-stand tickets, and exchange the coupon thereto attached for profit-sharing coupons upon the race, and he could continue this operation to as great an extent as he desired.

The present suit was instituted by the solicitor-general of the Stone Mountain Circuit, on the relation of named persons, to enjoin the operation of these race-tracks upon the facts hereinbefore stated. The defendant insists that he was not conducting a gaming-house or carrying on any lottery scheme, because he advised the public that upon personal request he would give to the one asking one of these profit-sharing coupons entitling him to his share of the profits in case he selected the winning dog in advance of the race. He further asserted that such request could be in advance of the races or at any time when he could be personally found about the race-track, and the request made of him. The evidence showed that of the racing coupons turned in a very small portion were thus so given away by him, and that the very large portion of the winning tickets were held by the purchasers who paid $2 for the privilege of hazarding their judgment upon the successful dog. In a circular setting forth rules of the operation of said business, Gullatt also reserved the right to make such division of profits as he saw fit, and give or refuse, as he saw fit, a betting coupon with the five-seat grand-stand ticket. No instance was shown where a betting coupon was refused on application in exchange for one of these profit-sharing coupons. Evidence was offered to show that this race-track was

conducted in an orderly manner, and that the best people in the community, male and female, attended. There was some evidence of disorder and arrests made because therof.

Betting on a dog fight is gaming. *Alford* v. *Burke,* 21 *Ga.* 46 (68 Am. D. 449). At least this construction has been put by this court upon the decision made in the case just cited. *Dyer* v. *Benson,* 69 *Ga.* 609. In the case last cited, betting on a horse-race was held to be gaming within the meaning of our criminal code. Again in *Doyle* v. *McIntyre,* 71 *Ga.* 673, it was held that betting on a horse-race was gaming, and that the loser could recover from the winner money lost on such a bet. So money posted on a wager on the result of an election is gaming; and may be recovered from a stakeholder, if, after notice that the bet has been withdrawn, he nevertheless pays it over to the winner without the assent of the retracting party. *McLennan* v. *Whiddon,* 120 *Ga.* 666 (48 S. E. 201). If one who engages in betting on a dog fight is gaming, or one who bets on a horse race or on an election is gaming, there seems to be no valid reason why one who bets on dog races, although the races are between dogs, where the winning dog is the one which first reaches an imitation rabbit run by electricity, is not likewise engaged in gaming. One who maintains a house for the purpose of betting on a horse-race is guilty of keeping a gaming-house, although betting on a horse-race is not prohibited by statute. *Thrower* v. *State,* 117 *Ga.* 753 (45 S. E. 432). If one who maintains a house or place for the purpose of gaming on a horse-race is guilty of keeping a gaming-house or gaming-place, although betting on a horse-race is not prohibited by statute, there is no valid reason why one who maintains a house or place for the purpose of permitting gaming on dog races is not likewise guilty of keeping a gaming-house or place within the meaning of § 389 of the Penal Code. In prohibiting a gaming-house or a gaming-place, it is intended to prevent the maintainance of a place at which persons gather for the purpose of hazarding and betting money, whether the subject-matter of a single bet is or is not made penal. The keeping of a gaming-house or a gaming-place "is a separate, well-defined offense, and entirely independent of the criminality of the betting carried on therein. The statute is aimed at the place, not at the players, nor at the game, nor at the subject-matter of the wager." *Thrower* v. *State,* supra.

"A public nuisance is one which damages all persons who come within the sphere of its operation, though it may vary in its effect on individuals." Civil Code (1910), § 4454. Under this definition the maintainance of a gaming-house or a gaming-place is a public nuisance. Before the adoption of our first code, keeping a gaming-house or a gaming-place was recognized as "a nuisance, and an offense against the public police, and a part of that law which our ancestors brought from England, and not impaired by our fundamental laws." *State* v. *Savannah, T. U. P. C.* 238; *Thrower* v. *State,* supra. A court of equity has jurisdiction, and in a proper case will by injunction restrain a public nuisance. "Equity generally will not interfere with the administration of the criminal law. The State, however, has an interest in the welfare, peace, and good order of its citizens and communities, and has provided in its laws for the abatement of nuisances whenever the public generally is injured." *Lofton* v. *Collins,* 117 *Ga.* 434, 440 (43 S. E. 708, 61 L. R. A. 150). Generally a public nuisance gives to any individual no right of action for injunction, but it must be abated by a process instituted in the name of the State. Civil Code (1910), § 5330. By clear and necessary implication injunction will lie in the name of the State to enjoin such a nuisance. Even before the adoption of our first code this court held that a court of equity has jurisdiction, and in a proper case may by injunction restrain a public nuisance upon information filed by the solicitor-general. *Mayor &c. of Columbus* v. *Jaques, 30 Ga. 506.* The fact, that the operator of this place advised the public that upon personal request he would give to any one asking it one of the profit-sharing coupons, which would entitle him to his share of the profits in case he selected the winning dog in advance of the race, did not take his place out of the gaming-house or gaming-place class. It is needless to say that the conduct of this place in an orderly manner, and the attendance of the best people in the community, male and female, would not render this place any the less a gaming-house or a gaming-place. So we are of the opinion that a court of equity has jurisdiction by injunction to restrain a public nuisance in a proper case, upon information filed by the solicitor-general; and that the present case is a proper one for the exercise of such jurisdiction.

*Judgment affirmed. All the Justices concur.*