## 24111. BOOKER *v.* THE STATE.

DECIDED OCTOBER 29, 1934.

*E. H. George,* for plaintiff in error.
*C. S. Baldwin Jr., solicitor-general,* contra.

GUERRY, J. Robert Booker, the defendant in this case, was indicted jointly with Clinton Baugh and George Sanford, for the offense of manufacturing intoxicating liquors. Asserting his innocence upon the trial, he pleaded not guilty. The jury returned a verdict of guilty. The evidence disclosed that around midnight

two witnesses for the State raided a still that was in full operation. They testified *positively* that Robert Booker, the defendant, was seen in front of the furnace, holding a lighted lantern while his confederates were capping the still; that the furnace was fired and whisky was being made; that they got within 30 yards of the still and stood there several minutes watching the operation thereof, and that they recognized the defendant and two others. One testified: "I slipped up in 30 steps of the still and recognized this boy [the defendant] and two others, Robert, · Clinton, and George. They had a fire in the furnace and a lantern. . . Robert [the defendant] was holding the lantern, and the other two capping the still. . . When I first went down to them I readily recognized them. . . I knew these boys at the time. . . Yes, I could recognize people 75 feet away by lantern light and the light of the furnace. I watched them some little bit until I recognized them." The other testified: "I raided the still with Mr. Booth on the night of February 19. I saw Robert [the defendant], Clinton, and George Sanford. I am sure I saw Robert Booker. They were making whisky. Mr. Booth first went down the path, and then came back and got me, and he goes around. I went to where Mr. Booth was, and, when I got there, I saw Robert holding a lantern, and it seems the other boys were capping it or maybe the cap blew off. . . Robert was standing in from [front?] of the furnace." The main witnesses for the defendant were his alleged confederates, who at the trial swore that they were guilty of making whisky and were at the still the night it was raided by the officers, although they had previously pleaded not guilty to such charge. They testified that the defendant was not present and had nothing to do with the liquor.

There are only the usual general grounds of the motion for a new trial. It is, undoubtedly, not to be questioned that if the defendant was actually present at the still, *helping and furthering* the ultimate end of making intoxicating liquor by means necessary to its performance, as witnesses for the State swore, he would have been guilty, and the jury would have been authorized to find him guilty of such offense. Learned counsel for the defendant insists, however, that the testimony of the State's witnesses that they recognized the defendant at the still on the night in question is contrary to physical facts, is highly incredible and impossible, that it should

be so declared, and that without such testimony the verdict was not supported by the evidence. We do not hesitate to rule against this contention. We recognize that this court, in testing the sufficiency of evidence to support a verdict, can not consider the *credibility* of the witnesses testifying, but that it *can* consider the *nature of the testimony* "and whether or not it should be treated as incredible because purporting to prove facts impossible." "Courts and juries are not bound to believe testimony as to facts incredible, impossible, or inherently improbable." *Patton* v. *State,* 117 *Ga.* 230 (43 S. E. 533). It is to be admitted that some things are themselves inherently impossible. As was said in the *Patton* case, supra, "a conviction could not be sustained by testimony that water of itself ran up hill, or that a distant object was recognized in the pitch dark, or that a witness recognized the voice of a man he had never heard speak, or that at night and in the woods he could tell that one 75 yards away had on a dirty shirt, or that he could distinguish whether the rifle was a Winchester or Martini." However, there is to our minds nothing inherently impossible, incredible, or *even improbable* in the recognition by the witnesses of the defendant. The evidence does not disclose what size fire was in the furnace, though from its light and the light of the lantern the State's witnesses were able to recognize the defendant. The witnesses do not attempt to testify that in the *pitch dark* they recognized the defendant at some distance, but do testify *positively* that by the aid of the light from the furnace and the lantern they were able to identify the defendant. It is true that there was testimony by those jointly indicted with the defendant that because of the peculiar topographical surroundings of the still and the heavy growth of woods, a person could not possibly get close enough to the still to recognize anyone there without causing considerable noise, and that they ran when the first noise was heard, but the State's witnesses testified that they did get close enough to recognize them and watched them a considerable time before actually making the raid. "Weighing the evidence and finding the truth in an obscure or doubtful case is work that can usually be well done, *best done,* by a jury of the vicinage," and "what they promulgate by their verdict as the value of the whole, and as the ultimate truth of the matter in controversy, ought to be accepted." *Smith* v. *State,* 63 *Ga.* 90. The jury has passed upon the credibility of the witnesses, they have

found the truth as to the disputed issues of fact, they have weighed the testimony and reconciled the conflicts; their result is that the defendant is guilty, in which result we are prepared to agree. The trial judge, therefore, properly overruled the motion for new trial.

Judgment affirmed. *Broyles, C. J., and MacIntyre, J., concur.*