## 28251. MARTIN v. THE STATE.

DECIDED JULY 16, 1940. REHEARING DENIED JULY 31, 1940.

*Sam Kimzey, J. Herbert Griggs,* for plaintiff in error.

*G. Fred Kelley,* solicitor-general, *John E. Frankum,* contra.

GARDNER, J. The indictment in this case contains two counts. Count 1 is based on the Code, § 26-6102, and charges that the defendant Clyde O. Martin did, on August 1, 1939, in Habersham County, Georgia, "maintain and keep a lewd house and place for the practice of fornication and adultery by himself and others." Count 2 is based on § 26-6103, and avers that, on the same date and

in the same county, the defendant "did keep and maintain by himself and others a common, ill-governed, and disorderly house, to the encouragement of idleness, gaming, drinking, and other misbehavior, and to the common disturbance of the neighborhood and orderly citizens." After the evidence had closed, counsel for the State elected to abandon count 1 of the indictment and to proceed on count 2 alone. The jury returned a verdict of guilty; and while the defendant's exception is to the judgment overruling his motion for new trial containing both the general grounds and certain special grounds, the controlling question is whether the court erred in admitting evidence that the house in question had the general reputation of being a common disorderly house.

The court did not err in admitting evidence of the general reputation of the defendant's place of business charged as being operated as a disorderly house as defined by the Code, § 26-6103, declaring that "any person who shall keep and maintain, either by himself or others, a common, ill-governed, and disorderly house, to the encouragement of idleness, gaming, drinking, or other misbehavior, or to the common disturbance of the neighborhood or orderly citizens, shall be guilty of a misdemeanor." Code §§ 26-6102, 26-6103, seeking to segregate the evils sought to be restrained, are kindred statutes, the former providing that "any person who shall maintain and keep a lewd house or place for the practice of fornication or adultery, either by himself or others, shall be guilty of a misdemeanor." Under a charge of maintaining a lewd house the general reputation of the house is admissible. *Hogan* v. *State,* 76 *Ga.* 82 (3); *Mimbs* v. *State,* 2 *Ga. App.* 387 (58 S. E. 499). Moreover, the general reputation of the inmates is admissible. *Coleman* v. *State,* 5 *Ga. App.* 766 (2) (64 S. E. 828); *McCain* v. *State,* 57 *Ga.* 390. In holding that the offenses covered by the two Code sections might be charged in two counts in the same indictment, the court, in *Jones* v. *State,* 2 *Ga. App.* 433, 434 (58 S. E. 559), said that "the two offenses of keeping and maintaining a lewd house, and keeping a common, ill-governed, and disorderly house are offenses of the same nature." While general reputation of a lewd house is admissible on a charge of keeping and maintaining such a house, it was said in *Jones* v. *State,* supra, that "such evidence alone, wholly uncorroborated, is not sufficient to establish the offense of keeping and maintaining a lewd house." See *Watson*

v. *State*, 10 *Ga. App.* 794 (74 S. E. 89) ; *Wilkes* v. *State*, 23 *Ga. App.* 727, 728 (99 S. E. 390). While the statute against maintaining a lewd house is a restrictive statute as to the evil inhibited, that with reference to keeping a disorderly house is more extensive, covering a broad field of evils prohibited, and may include that of operating a lewd house. At common law "a disorderly house is a house in which people abide or to which they resort to the disturbance of the neighborhood or for purposes which are injurious to the public morals, health, convenience or safety." 18 C. J. 1233, § 1. "In its broadest sense," a disorderly house may be defined "as a house that is kept in such a way as to disturb, annoy, and scandalize the public generally or the neighborhood, or the passers-by on a highway, or in such way as to encourage or promote·breaches of the peace, or to corrupt the morals of the community." Mossman *v.* Ft. Collins, 40 Colo. 270, 273 (90 Pac. 605, 122 Am. St. R. 1060. A disorderly house may be a gaming-house, or a tippling shop, or a bawdy house. 18 C. J. 1233, § 1; 18 C. J. 1242, § 25 (3) ; 18 C. J. 1243, § 31. The term "disorderly house," as used in the Code, § 26-6103, not only includes these places where illegal buying and drinking of liquor and beer, and the operation of slot machines are carried on, but also includes places where immoral practices and gambling are carried on in the manner described in the statute. "A house may be disorderly if the acts there done are contrary to law and subversive of the public morals, although the place is conducted in a quiet manner, and if the public peace and the quiet of the neighborhood are not disturbed." 18 C. J. 1236, § 8. In defining "ill-governed," it is not that the noises are not restrained; it is that the illegal practices are *permitted*. As already indicated, the general reputation of a bawdy house is admissible, whether charged under the separate Code section with reference thereto, or existent within the more general inclusive charge of "disorderly house." But a further element of a disorderly house is that of gaming, or where gaming is committed. General reputation is admissible on a charge of operating a gaming-house. *Bashinski* v. *State*, 122 *Ga.* 164 (50 S. E. 54) ; *Dudley* v. *State*, 18 *Ga. App.* 509 (89 S. E. 599) ; *Pritchett* v. *State*, 20 *Ga. App.* 189 (92 S. E. 948). "A house coming within the definition of a disorderly house constituted a common or public nuisance. . . The reason why disorderly houses were considered a nuisance may in

general be said to be because they tended to draw together idle and dissolute persons engaged in unlawful or immoral practices, thereby endangering the public morals or peace." 18 C. J. 1234, § 3. It is apparent that a disorderly house having as its evil elements immorality, gaming, vagrancy, illegal operation of slot machines, illegal purchases of whisky and beer, and the like, is provable, at least as to several of its elements, by evidence of general reputation, though insufficient of itself to prove the completed offense. Basically such a house is a nuisance; and we think, as such, its general reputation would be admissible. There can be no sound logic in permitting the general reputation to be provable under the charge as covered by the Code, § 26-6102, and denying its proof under § 26-6103. "By the weight of authority, the reputation of a house is admissible upon the issue as to whether it is a disorderly house." 20 Am. Jur. 407, § 461. When the State waived the count drawn under § 26-6102, under which general reputation was admissible, the court did not err in allowing evidence of general reputation under the count based on § 26-6103. The remaining assignments of error are without merit, and the evidence supports the verdict.

*Judgment affirmed. Broyles, C. J., concurs.*

MacINTYRE, J., dissenting. The indictment charged that the defendant, "unlawfully and with force and arms, did keep and maintain by himself and others, a common, ill-governed and disorderly house, to the encouragement of idleness, gaming, drinking, and other misbehavior, and to the common disturbance of the neighborhood and orderly citizens." The question presented in this case is whether under such indictment proof that the house had a general reputation of being a common disorderly house was admissible. The State contends that evidence that the house was, and is, by reputation "a common disorderly house" was admissible, and relies on *Heard* v. *State*, 113 *Ga.* 444 (39 S. E. 118), as sustaining this position. As I construe that decision, it merely holds that the charge of conducting "a common disorderly house" could be proved by proof of any one, not necessarily all, of the prohibited acts. The judge in the instant case allowed, over objection, proof that the house in question had a general reputation of being a common disorderly house. The indictment was in two counts; the first count charging that the defendant did maintain and keep a lewd house

and place for the practice of fornication and adultery; the second charging that the defendant did keep and maintain a common, ill-governed and disorderly house, to the encouragement of idleness, gaming, drinking, and other misbehavior, and to the common disturbance of the neighborhood and orderly citizens. After the close of the evidence, the State expressly abandoned the first count stating to the court that the second count would be relied on, that of keeping and maintaining a disorderly, ill-governed house. The judge expressly charged the jury that "the reputation of the place, as shown by the testimony, is a circumstance which the jury would have the right to consider in connection with the other testimony in the case, but standing alone it would not be sufficient to authorize a conviction in this case." I think the case was tried throughout by the court upon the theory that proof that the house had a general reputation of being a common disorderly house was admissible in evidence.

Speaking generally, a house of ill fame or a lewd house has been sometimes called a disorderly house, or vice versa. However, in our State, we have a statute making it an offense to maintain "a common disorderly house," as follows: "Any person who shall keep and maintain, either by himself or others, a common, ill-governed, and disorderly house, to the encouragement of idleness, gaming, drinking, or other misbehavior, or to the common disturbance of the neighborhood or orderly citizens, shall be guilty of a misdemeanor." Code, § 26-6103. Another statute makes it a different and distinct crime to "maintain and keep a lewd house," as follows: "Any person who shall maintain and keep a lewd house or place for the practice of fornication or adultery, either by himself or others, shall be guilty of a misdemeanor." § 26-6102. Where the defendant was found guilty under an indictment which charged in general terms the keeping of a common disorderly house under § 26-6103, proof that the house had a general reputation of being a common disorderly house was not admissible. To sustain the indictment, it is necessary to prove the particular facts which constitute the offense. 1 Wharton's Criminal Evidence, 486, § 260. Under an indictment for keeping a lewd house, which is drawn under § 26-6102, the keeping of a lewd house is the statutory term describing the offense, and the lewd reputation of the house may be put in evidence; for a lewd house is a house of ill fame or ill

reputation. Black's Law Dictionary, 202; 2 Bouvier's Law Dictionary, 1460; *Cotton* v. *Atlanta,* 10 *Ga. App.* 397 (73 S. E. 683). The keeping of the house with such a reputation is the offense charged in the indictment, and is an issue made by the pleadings (the indictment) and the ill reputation of the house is necessarily an essential fact that must be proved. The ill reputation of the house, under our statute, is an objective fact itself, and the evidence that its reputation is that of a lewd house (a house of ill fame or ill reputation) is proper. The reputation of the house may be stated as an objective fact, without giving the various preliminary facts from which such reputation is inferred. The ill reputation of the house is, by statute and the indictment, made one of the essential elements of the crime charged, and the reputation becomes an evidentiary fact and is admissible like any other evidentiary fact. In a cow-stealing case, witnesses may testify that the animal stolen was a cow, as an objective fact. It is not necessary that the witness testify that it has four legs, two ears, etc., and state from these preliminary facts, or for these reasons that he inferred, or it is his conclusion, that the animal is a cow. The kind of animal stolen is alleged to be a cow, and the fact that the animal was a cow may be testified to by the witness as an objective fact.

In any criminal case for maintaining or keeping a house of ill fame, if the witness knows the reputation, that is, if he knows the house is reputed or accepted by the general public opinion as being one of ill repute (even though he does not know in reality it is such a house), he may nevertheless testify to this objective fact of ill reputation of the house, without giving any preliminary fact or facts upon which he based his conclusion as to its reputation. But where the indictment, as here, charges the maintaining of "a common disorderly house," not an ill reputed disorderly house, the indictment (the pleading) does not make an issue as to whether the house was one of ill reputation. The reputation of the house is not put in issue by the pleading (the indictment), and evidence of the reputation of the house is not admissible. The reputation of the disorderly house is not charged in the indictment as being, nor is it, essential or material on the question of whether the house was in reality, "a common disorderly house" as charged in the indictment, and such reputation would be secondary evidence of

disorder which is susceptible of immediate proof. Hence the particular acts of disorder are admissible as primary evidence from which the character of the house may be inferred, and also the bad conduct of those frequenting the house. In this regard the Maryland Court of Appeals, where the offense charged was keeping a disorderly house, said that "Evidence of the general reputation of the house was inadmissible, but the general reputation of those who frequented it was admissible for the purpose of characterizing the house and showing the object of their visit." Beard *v.* State, 71 Md. 275 (17 Atl. 1044, 4 L. R. A. 675, 678, 17 Am. St. R. 536). Our Supreme Court, in *Mahalovitch* v. *State*, 54 *Ga.* 217, said: "On the trial of an indictment for keeping 'a disorderly house,' it was not error in the judge to permit the State to prove by a policeman that he had gone to the house to arrest a criminal, and that the defendant, who was then keeping the house, secreted the person he was seeking in a closet. Such an act, standing alone, would not be sufficient upon which to base a conviction, but it might be one act, among others, going to show that the house was a disorderly one." See also Belasco *v.* Hannant, 3 B. & S. 13-20, quoted in *Heard* v. *State*, 113 *Ga.* 444, 451 (39 S. E. 118). However, in the instant case proof that the house in question had a general reputation of being a common disorderly house was not admissible. Commonwealth *v.* Soo Hoo Doo, 41 Pa. Super. 249; Toney *v.* State, 60 Ala. 97; People *v.* Mauch, 24 How. (N. Y.) 276; Sparks *v.* State, 59 Ala. 82; Dixon *v.* Mayer, 186 Ill. App. 247; State *v.* Boardman, 64 Maine, 523; Shaffer *v.* State, 87 Md. 124; State *v.* Bean, 21 Mo. 267; Heflin *v.* State, 20 N. J. L. 151.

I think that the court in this case, having allowed several witnesses to testify that the house in question had a general reputation of being a common disorderly house, and having charged the jury that they would have a right to consider it in connection with the other testimony in the case, committed reversible error. I think a new trial should be granted.

### ON MOTION FOR REHEARING.

GARDNER, J. We have studied very carefully the contentions in the motion for rehearing, and have reread the brief of evidence and the grounds of the motion for new trial and the exceptions presented, in the light of the authorities cited by the plaintiff in error. We find nothing in the opinion which contradicts or conflicts with

the previous rulings of this court or of the Supreme Court of the State. Able counsel for plaintiff in error contend that the State's testimony with reference to the general reputation is based upon hearsay testimony not properly coming within the general exceptions. A careful reading of the authorities cited in the opinion, as well as those cited in the motion for rehearing, in the light of the evidence and the exceptions in the motion for new trial, is sufficient to establish the fact that the statutory questions with reference to proof of general reputation were substantially complied with. It will be further observed that if any damaging evidence as to specific acts with reference to the general reputation of the house was injected into the case, it was done by the defendant on cross-examination and without any objection from him, as far as the record shows, that the giving of such testimony was not responsive to the questions within the broad sphere of cross-examination.

*Rehearing denied. Broyles, C. J., concurs. MacIntyre, J., dissents.*