## 69969. BARNES et al. v. THE STATE.
(334 SE2d 205)

BEASLEY, Judge.

Appellants Sherman Anthony (Tony) Barnes and Jimmy Lou Barnes were indicted for seven violations of the Georgia Controlled Substances Act. A verdict was directed by the trial court as to Counts 2 and 7, conspiracy to distribute marijuana and possession of dextropropoxyphene (Darvon). The jury acquitted them on Counts 3, 5, and 6 for possession of cocaine, hydroxyzine and phendimetrazine (Preludin). They were found guilty of Count 1 for maintaining a dwelling house where controlled substances are stored (OCGA § 16-13-42 (a) (5)), and Count 4 for possession of less than one ounce of marijuana (OCGA § 16-30-2 (b)), from which verdicts they appeal.

1. Appellants contend that their convictions must be reversed because the evidence was insufficient as a matter of law under the equal access doctrine.

The jury in this case heard a great deal of evidence over three days' time. Its twelve members were able to observe the witnesses, their mannerisms, their attitudes, their reactions to questions and answers and incidents occurring during the trial. They were able to hear the testimony as it was given, in the myriad of nuances in tone, inflec-

---

tion, gesture, and hesitation. They were able to take into account all of this and the other particulars surrounding the presentation of a live case.

We are unable to do that, to share the same sensory perceptions when reviewing a written transcript of only the words that were said. The subtleties detectible by alert jurors whose sole attention is focused on the unfolding of the case as it occurs is lost to us. "This court has always recognized that the greatest weight and consideration should be paid to the verdicts of juries, and in many cases has held that while the verdict was different from what the judges would have rendered as men, the court would not interfere. So, too, where the evidence was conflicting, it would not disturb the finding, although it might think that the preponderance was in favor of the losing party. In testing the sufficiency of evidence this court can not consider the credibility of witnesses, that being a matter exclusively for the jury, who note their manner of testifying, and consider the thousand and one things transpiring during a trial, which can not be photographed or transcribed and transmitted to this court as a part of the record. But while it can not consider the credibility of a witness, it must consider the nature and character of his testimony, whether it is in accord with natural laws, or is improbable, incredible, or seeks to establish facts which are impossible, or which, if not impossible, must in their very nature be uncertain, vague, indefinite, and insufficient to remove reasonable doubts . . . and often find verdicts contrary to the direct testimony of a witness, because their experience demonstrates that what the witness said could not have been true." *Patton v. State*, 117 Ga. 230, 234 (43 SE 533) (1902). "We will not speculate as to what evidence the jury chose to believe or disbelieve. On appeal this court is bound to construe the evidence with every inference and presumption being in favor of upholding the jury's verdict. [Cit.]" *Rhodes v. State*, 168 Ga. App. 10, 11 (308 SE2d 33) (1983). " 'Weighing the evidence and finding the truth in an obscure or doubtful case is work that can usually be well done, *best done*, by a jury of the vicinage' and 'what they promulgate by their verdict as the value of the whole, and as the ultimate truth of the matter in controversy, ought to be accepted.' *Smith v. State*, 63 Ga. 90." *Booker v. State*, 50 Ga. App. 66, 68 (176 SE 917) (1934). "It is basic that after a verdict of guilty the appellate courts must draw every inference and presumption in favor of the verdict. [Cits.]" *Sanford v. State*, 129 Ga. App. 337, 338 (3) (199 SE2d 560) (1973).

Thus, the jury's function is to weigh the evidence and ascertain the credibility of the witnesses and of their testimony. *Barton v. State*, 40 Ga. App. 504 (150 SE 449) (1929); *Burse v. State*, 41 Ga. App. 364 (153 SE 91) (1930). They may accept or reject all or any part of the testimony of any witness. *Burke v. State*, 196 Ga. 702, 707

(27 SE2d 313) (1943); *Davis v. State*, 205 Ga. 248, 254 (5) (53 SE2d 545) (1949); *Johnson v. State*, 69 Ga. App. 663 (1) (26 SE2d 482) (1943). That is not our function. *Williams v. State*, 150 Ga. App. 852, 854 (258 SE2d 659) (1979); *Clary v. State*, 151 Ga. App. 301 (1) (259 SE2d 697) (1979). In our society we have delegated the task of determining the truth to lay citizens of the community in which crime occurs; they are not mere advisors to judges.

For these and perhaps other reasons, on appeal "[w]e are bound to take the evidence most strongly in favor of the jury's verdict. [Cit.]" *Webb v. State*, 170 Ga. App. 115 (316 SE2d 561) (1984). We may not substitute our opinion of the evidence for the combined wisdom of those twelve persons.

The trial judge is often regarded as the thirteenth juror, in the context of his authority to grant a motion for new trial. *Ricketts v. Williams*, 242 Ga. 303, 304 (284 SE2d 673) (1978). "[W]here no error of law is shown and there is some evidence to support the finding of the jury, we have no power under the law to invade the province of the jury or overrule the trial judge, who, fresh from the atmosphere of the trial, sends to us a record in which he endorses the finding of the jury which tried the case in his presence. This is true even in cases where the evidence might be described as weak, unsatisfactory, and doubtful." *Pittman v. State*, 44 Ga. App. 204, 205 (161 SE 155) (1931). *Rhodes v. State*, supra. In this case, having sat and observed and heard the same, as the court did, it affirmed the jury's verdict and found the evidence sufficient to warrant it.

Taking all of this into account, on appeal as to the general grounds we must affirm if "any rational trier of fact could have found [defendants] guilty as charged beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979)." *Webb v. State*, supra at (3).

In that legal context, then, we affirm the convictions.

The Barneses operate a used car business in Ranger, on the site of which are located the office, the Barneses' personal residence (a double-wide trailer) and trailers where Mrs. Barnes' father and employees live. In the middle of the afternoon of May 18, 1984, a number of law enforcement officers and a dog trained to sniff out drugs arrived in five vehicles to execute a search warrant for the home and office.[1]

When the officers arrived at the premises, Jimmy Lou Barnes, the wife, ran towards the Barneses' home warning "raid" three or four times. Inside were Jennifer Silvers, a child, and Rita Fay Cronan, an

---

[1] The search of the office yielded the Count 6 Preludin and the Count 7 Darvon, but they turned out to be drugs prescribed to employees.

employee and friend who, when officers entered, had a towel wrapped around her wet head. Cronan said she had been in the back bathroom which was connected by a door to the master bedroom through which one would have to first pass. The double-wide mobile home had another bath, the main one, and two other bedrooms, one of which was used as a spare room and was sometimes occupied by this or other employees when they returned late at night from car sales. The other bedroom was the Barneses' son's. On the vanity beside the sink in that back bathroom were scales, three boxes of Ziploc plastic bags (two labeled storage bags and one labeled sandwich bags), and a bag of brown paper bags labeled "lunch bags." On an open shelf was a canister of lactose[2] and a money box with money, which Cronan said was usually in the amount of about $1,000. On the floor beside the vanity was a pocketbook, later claimed by Cronan. Drugs constituted its contents: two sacks of leafy material, seed, several marijuana cigarettes, and residue at the bottom.

In a closet in the master bedroom was a grocery bag with numerous empty prescription bottles in it.[3] In the living room/den was a decorative wood stove into which two baggies with marijuana remains had been placed. Although defendant Tony Barnes, the husband, was not present at his business on the premises or at his home at that time, there was testimony that he or Mrs. Barnes was usually at the trailer when any employee went there.

Cronan, after invoking the Fifth Amendment at the trial when asked about the purse, was granted immunity at this juncture. She was the mother of defendant Tony's 6-year-old daughter. She and the little girl lived with Cronan's father but she stayed "occasionally" in the trailer's spare room so as not to have to go home in the early morning hours when they went to car sales. Cronan, who was 26, worked for defendants about seven years and, when pressed, guessed she had been there "40%" of her time in that seven years; she did not identify when that was, in relation to current time. Although there was testimony that other employees visited the trailer, there was no evidence whatsoever that any other employee had stayed there that day, the day before, or even recently. Several testified that they had been to the trailer at various times.

After having been granted immunity, Cronan said she was unaware of the marijuana and baggies in the stove but that the purse with the marijuana in it was hers. The items in the bathroom, i.e., the scales, baggies, lunch bags, canister of lactose, and money box with

---

[2] It was the basis for the Count 3 cocaine possession. A state crime lab expert testified that the jar of lactose contained a quantity of cocaine equivalent to less than one part per million.

[3] Also found there was the hydroxyzine (atarax), which was Cronan's old hive medicine.

money were also not hers, she said. She claimed she bought the marijuana the day before from a "Diane" whose last name she did not know but had chanced upon in a department store in Dalton, after not seeing her since 1978 when they both worked for the same employer for two months. They had some conversation in the store and then went to Diane's car and Cronan made this unplanned purchase because Diane was getting out of the business and was willing to sell the marijuana for $65 even though it was worth at least $100. Previously, Cronan purchased small amounts of marijuana only every two or three months, according to her testimony. She said she had this marijuana in the trailer because she did not want to leave it at home for fear that her father would find it (although she had kept marijuana at home before), so she brought it in this pocketbook which was not her regular one, intending to put it in the woods by the side of the road on her way home from work that day (although she had testified she washed her hair because they were going to a car sale that night). The jury was not compelled to accept this explanation of where the marijuana came from or when it was put into the purse.

We do not believe the "equal access" law operates as a matter of law here to shield defendant Tony from the presumption of possession of the marijuana in the fireplace. " 'It is well settled that where contraband is found in a house the presumption is that such contraband was possessed by the head of the household. [Cits.] However, where others, not members of the defendant's household, live there and have equal access to the same, this rule cannot be applied.' [Cits.] 'Merely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime.' [Cits.]" *Moreland v. State*, 133 Ga. App. 723, 724 (1) (212 SE2d 866) (1975). There is no evidence that anyone else had "equal" access to his trailer so as to have "equal" opportunity to put or discard baggies nearly empty of marijuana into the stove. Nor was there any evidence that anyone had "equal" access or "equal" opportunity to place and leave all the items on the vanity or in the open closet in the master bedroom's bath or in the master bedroom's closet. Nobody else lived there besides his wife, co-defendant, and his young son. Cronan was the only one who stayed with any frequency and she did not testify that she had stayed recently. More to point, she testified that none of the items were hers except the marijuana in the purse. The equal access rule has been used to apply when others "live" in the same premises, not when a residence has occasional, even overnight, visitors. See, e.g., *Moreland v. State*, supra. "The 'equal access' rule is not properly invoked . . . with regard to . . . persons who were merely visiting the apartment at that time, because the contraband was for the most part not in open, noto-

rious and easily accessible areas and the . . . persons present were all non-residents, who were not shown to have been on the premises either previously or frequently, so as to have had equal access with the defendant." *Kenerleber v. State*, 137 Ga. App. 618 (224 SE2d 476) (1976). Thus, *Smith v. State*, 156 Ga. App. 102 (10) (273 SE2d 918) (1980), also does not apply because in that case, as in *Moreland*, someone other than the head of the household and immediate family was living in the premises. As in *Prescott v. State*, 164 Ga. App. 671, 672 (1) (297 SE2d 362) (1982), so here: "Appellant made no affirmative showing, however, that anyone other than himself and his wife had had actual access to the bedroom or its closet during several days or weeks prior to the discovery of the pills." The same reasoning applies here with respect to the marijuana, if one accepts Cronan's testimony that she had no knowledge. Thus, *"equal* access" is not merely "access." Moreover, "[s]ince this contraband was not in an open, notorious and equally accessible area, the equal access rule would not be applicable. [Cit.]" *Allen v. State*, 158 Ga. App. 691 (1) (282 SE2d 126) (1981).

Even if it did apply, and considering the place and condition of the marijuana found, i.e., only residue in two baggies, the hypothesis that a visiting employee put them in the stove is more of a bare possibility than a reasonable hypothesis. "A reasonable hypothesis as used in this Code section [Code Ann. § 38-109, now OCGA § 24-4-6] refers only to 'such reasonable inferences as are ordinarily drawn by ordinary men in the light of their experience in everyday life; [it] does not mean that the act might by bare possibility have been done by someone else.' [Cits.]" *Prescott v. State*, supra at 672. " 'The rule [OCGA § 24-4-6] as to the sufficiency of circumstantial evidence to support a conviction is that the evidence exclude every reasonable hypothesis except the guilt of the accused, not that it removes every possibility of his innocence.' [Cit.]" *Benson v. State*, 172 Ga. App. 135, 137 (322 SE2d 339) (1984). "Generally, questions of reasonableness are for jury resolution, and this court will not disturb the jury's finding that the evidence was sufficient to exclude every reasonable hypothesis except the defendant's guilt unless the verdict is unsupportable as a matter of law. [Cits.]" *Shreve v. State*, 172 Ga. App. 190, 192 (322 SE2d 362) (1984).

It is a matter of adding things together. It is the jury's job to add things up. The question is whether they could total up the evidence they heard, taking into account factors we cannot see or hear, to constitute guilt. Evidence certainly can be added up in different ways. A verdict need not be demanded by the evidence; it need not rule out any and every other version possible. Here the items in the defendants' bathroom, open to view, and in their bedroom closet, were drug-dispensing paraphernalia. Marijuana, while not much, was found

in their residence, in multiple containers of the same type of which a supply was on the bathroom vanity. As to drug accouterments being a valid connector as circumstantial evidence, see *Benson v. State*, supra at 137. In the instant case the only difference is that the accouterments are associated with keeping or selling rather than with use.

As to the wife's guilt, like that of Gloria Moreland in the *Moreland* case, the jury apparently found that her frantic actions in calling as the police drove up gave her away. Although the marijuana and empty pill bottles in her home were not in the open, the scales, baggies, lunch bags, money box, and canister of lactose were all within close proximity to each other in the private bathroom of her and her husband. Moreover, " ' "A person who, though not in actual possession, knowingly has both the power and intention at a given time to exercise dominion or control over a thing is then in constructive possession of it. The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons shared actual or constructive possession of a thing, possession is joint." [Cit.]' [Cit.]" *McLeod v. State*, 170 Ga. App. 415, 417 (3) (317 SE2d 253) (1984). Thus the jury could find that she possessed, along with her husband.

2. The evidence, taken all together, supports the verdict by the jury which carefully weighed it, discarded some counts, and concluded that these two counts had been proved to their satisfaction beyond a reasonable doubt. The possession of what was in the stove, which supported the misdemeanor conviction, was evidence also as to the charge of maintaining a dwelling which is used for keeping a controlled substance, when added with all the rest.

As in *Benson*, supra at 137, so we rule here: "On appeal we must view the evidence in a light favorable to the verdict, and we find that the evidence is sufficient to enable any rational trier of facts to find the existence of the offense[s] charged beyond a reasonable doubt."

*Judgment affirmed. Banke, C. J., Deen, P. J., and McMurray, P. J., concur. Carley, J., concurs in the judgment only. Birdsong, P. J., Sognier, Pope, and Benham, JJ., dissent.*

Pope, Judge, dissenting.

I am keenly aware of the importance accorded a verdict returned by a jury, as well as the standard to be applied on appellate review. However, it is also the role of this court to review the sufficiency of the evidence when it is called to question on appeal. In performing this function, I reach a different result as to both counts upon which appellants were convicted. Therefore, I dissent to the majority opinion affirming these convictions.

Based upon the following facts, I believe the evidence was insufficient as a matter of law under the equal access doctrine. The

628

Barneses operate a used car business in Ranger, Georgia, on the site of which are located the office, the Barneses' personal residence (a double-wide trailer) and a number of other trailers where various relatives, employees and other people live. On the afternoon of May 18, 1984 some ten law enforcement officers and a dog trained to sniff out drugs arrived in five vehicles to execute a search warrant. Some of the officers searched the car lot office while others searched the Barneses' trailer home. In the office a bottle of Preludin prescribed to one employee was seized from her person and a bottle of Darvon prescribed to another employee was taken from her desk drawer. Mrs. Barnes was outside the residence trailer and upon sighting the search party's arrival ran towards the double-wide trailer shouting what sounded to some of the officers like "Raid!" Inside they found three people: Rita Fay Cronan, who was just getting out of the shower, Jennifer Silvers and her young son.

During the search of the residence trailer the officers discovered a plastic zip-loc baggie *in Ms. Cronan's purse in the bathroom off the master bedroom* where she had been taking a shower. It contained three ounces of marijuana, which formed the basis of both Counts 2 and 4 (conspiracy to distribute and felony possession). Ms. Cronan testified under a grant of immunity that the marijuana was hers, that she had bought it the day before and brought it into the house trailer in her pocketbook where it remained. Also found in the master bathroom were a set of scales, some boxes of plastic zip-loc baggies and a container of lactose,[1] upon which the Count 3 cocaine possession was based. A state crime lab expert testified that the jar of lactose contained a quantity of cocaine equivalent to less than one part per million, an infinitesimal amount roughly equal to "one mouthful of food that a person would eat in . . . a lifetime." Inside an ornamental wood stove in the living room of the house trailer were found several plastic bags containing a residue of marijuana totaling in the aggregate 2.7 grams (less than 1/10 of an ounce). In a closet a four-year-old prescription bottle of atarax (hive medicine) labelled for Rita Fay Cronan was found.

Other testimony from numerous witnesses showed that Tony Barnes was not present anywhere on the premises on the day of the search; that Jimmy Lou Barnes was outside at the time the police arrived; that Rita Fay Cronan lived in the Barneses' house trailer about 40 percent of the time; that for many years a large number of employees and friends and relatives were allowed to sleep in the spare bedroom and regularly use the kitchen and bath facilities; that every-

[1] Contrary to the majority opinion, my review of the trial transcript has revealed that Ms. Cronan did not disclaim or admit ownership of these articles. She was simply not questioned in this regard.

body who worked for the used car business had unlimited access to the house trailer and was in and out every day; that Cathy Sue Dixon had done housecleaning for the Barneses for two and a half years and had never seen any marijuana; that none of these witnesses had ever smoked marijuana in the presence of Mr. and Mrs. Barnes, or seen them smoke marijuana; that their house trailer was always open and available for all employees to come and go for whatever purposes they needed, whether or not the Barneses were present; and that a metal cash box was kept in the trailer for paying employees in cash and that at least two others aside from appellants had access to it.

"To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of guilt of the accused." OCGA § 24-4-6. The proved facts in this case did not exclude the reasonable hypothesis that the 2.7 grams of marijuana found in the wood stove in the Barneses' living room, which they were convicted of possessing, might have actually belonged to any of the many other people shown to have had equal access to the trailer.

" 'A connection can be made between a defendant and contraband found in his presence by evidence which shows that the contraband was discovered on premises occupied and controlled by the defendant with no right of equal access and control in others. [Cit.] Such occupation and control may be inferred when the accused is the owner or tenant of the premises upon which the illicit drugs are discovered. [Cit.]' [Cit.] Under the 'equal access' rule, however, the inference of constructive possession which attaches to an owner or lessee of certain premises is rebuttable by an affirmative showing that persons other than the defendant owner or lessee had equal access to the premises where the contraband was found. [Cits.] Where it is affirmatively shown that others had equal access or opportunity to commit the crime, the mere discovery of contraband on the defendant's premises is insufficient to support a conviction. [Cits.]" *Shreve v. State*, 172 Ga. App. 190, 191 (322 SE2d 362) (1984). Since Tony Barnes was not present at the time of the search, '[h]is constructive knowledge cannot be predicated on the fact that drugs were found in a household of which he is the head, where others, who were not members of his household, live in the same house. [Cit.]" *Moreland v. State*, 133 Ga. App. 723, 724 (212 SE2d 866) (1975). Accord *Smith v. State*, 156 Ga. App. 102 (1) (273 SE2d 918) (1980); *McCann v. State*, 137 Ga. App. 445 (1) (224 SE2d 99) (1976). Under such an affirmative showing of equal access, both appellants' convictions of possessing marijuana must be reversed.

Although the second enumeration of error is not addressed by the majority, review of the issue raised therein is warranted, especially since it presents a question of first impression in Georgia. OCGA §

16-13-42 (a) (5) provides: "It is unlawful for any person . . . *[k]nowingly* to keep or maintain any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place which is resorted to by persons using controlled substances in violation of this article for the purpose of using these substances, or which is used for keeping or selling them in violation of this article." (Emphasis supplied.) The State argues that the presence of the scales, the boxes of plastic bags and the used bags found in the wood stove containing marijuana residue constitute a sufficient showing for the jury to conclude that appellants knowingly allowed marijuana to be kept in their residence for use, storage or packaging by themselves or other persons in violation of this statute. Appellants contend that this legislation was intended to deal with the maintenance of a house which was repeatedly or continuously used to "stash" drugs or as a place where drugs were sold and that the single instance in which a misdemeanor amount of marijuana was found in their trailer does not constitute such a repeated or continuous offense. Further, appellants argue that the legislation was not intended to convert a misdemeanor offense into a felony solely because it occurred inside rather than outside a structure. This is a question of first impression in Georgia.

Study of other jurisdictions with statutes similar to OCGA § 16-13-42 (a) (5) indicates that a number require that repeated or recurrent use of the private dwelling in the prohibited manner be established to sustain a conviction under the statute. That is, a single isolated instance of the unlawful activity is insufficient. See, e.g., *Baldwin v. State*, 468 A2d 394, 397 (Md. App. 1983); *State v. Welch*, 441 A2d 539, 542 (R.I. 1982); *State v. Bulhoes*, 430 A2d 1274 (1) (R.I. 1981); *State v. Reis*, 430 A2d 749, 752 n. 7 (R.I. 1981). Cf. *People v. Clay*, 78 Cal. Rptr. 56, 60 (Cal. App. 1969). While for the most part these statutes and the cases construing them rely upon a theory of nuisance to invoke the requirement of repeated or recurrent use, I am persuaded that conviction under OCGA § 16-13-42 (a) (5) also requires a showing of more than one instance of the proscribed activity. I base this conclusion upon my examination of other Georgia statutes which prohibit maintaining or keeping a dwelling or other place for the purpose of various specified criminal activities. OCGA § 16-6-10 prohibits keeping a place of prostitution and OCGA § 16-11-44 makes it a criminal violation to maintain a disorderly house. Both appear to require evidence of more than a single instance of the criminal conduct to support a conviction. See generally *Brewer v. State*, 129 Ga. App. 118 (1) (199 SE2d 109) (1973); *Snead v. State*, 127 Ga. App. 12 (1) (192 SE2d 415) (1972); *Birdwell v. State*, 112 Ga. App. 836 (1, 2) (146 SE2d 374) (1965); *Martin v. State*, 62 Ga. App. 902 (10 SE2d 254) (1940). Keeping a gambling place is proscribed by OCGA § 16-12-23 (a). Such has been analogized to maintaining a public nuisance

(*Gullatt v. State*, 169 Ga. 538 (3) (150 SE 825) (1929)) which requires more than proof of a single instance of gaming. See *White v. State*, 115 Ga. 570, 571 (41 SE 986) (1902). But see *McGahee v. State*, 133 Ga. App. 964 (1) (213 SE2d 91) (1975), which makes no mention of multiple instances.

I believe that conviction of violating OCGA § 16-13-42 (a) (5) requires presentation of evidence of recurrent or repeated use of the dwelling in the specified criminal manner, at least more than a single isolated incident. Such evidence was not produced in this case. Moreover, from my research I find the majority of cases require the prosecution to show that the defendant owner had control of the premises at the time the offense was committed. All appear to require proof of knowledge of the use of the dwelling in the prohibited manner. See Annot. 54 ALR3d 1297 (1973) and cases cited therein; 28 CJS, Drugs & Narcotics Supp., § 153 and cases cited therein. OCGA § 16-13-42 (a) (5) explicitly requires knowledge that the dwelling is being used for the specified criminal conduct. While either a showing of repeated or recurrent use of the house or knowledge coupled with acquiescence would be sufficient for conviction, the evidence presented in the instant case falls far short of this standard. In light of the fact that the very small amount of marijuana found was not in an area in the exclusive control of appellants and could have been possessed by any one of a dozen or more persons with unrestricted access to the trailer, as well as the absence of evidence to show that appellants had any knowledge of its existence, the equal access rule not only bars a conviction on the possession charge but also precludes a finding that they were maintaining a house for the use, sale or keeping of illegal drugs as contemplated by the statute. Consequently, the convictions under both counts of the indictment cannot stand. I would reverse appellants' convictions on both counts.

I am authorized to state that Presiding Judge Birdsong, Judge Sognier and Judge Benham join in this dissent.

DECIDED JULY 16, 1985 —
REHEARING DENIED JULY 31, 1985 — ▮▮▮▮▮

*Austin E. Catts, Donald F. Samuel, J. Britten Miller, Jr.*, for appellants.

*Darrell E. Wilson, District Attorney, Mickey R. Thacker, Assistant District Attorney*, for appellee.