## 1302.   COLEMAN *v.* THE STATE.

1. The Court of Appeals is without jurisdiction to consider the grounds of a motion to dismiss a bill of exceptions, predicated upon matters arising prior to the judgment granting or overruling the motion for new trial.

2. In a prosecution for keeping a lewd house, evidence of the general reputation of the house and of the women living therein is admissible in corroboration of other facts and circumstances in the case; but it is error to instruct the jury that "it is not necessary for the State to

prove that there were acts of adultery or fornication committed at such house." In order to authorize a conviction, the jury must be satisfied, either by direct evidence or by the circumstances, that the house was kept for the practice of adultery or fornication. It is the gist of the offense that the house was kept for that purpose. It was therefore error to instruct the jury that "It would be sufficient if the State proves to your reasonable satisfaction that she bears the general reputation of being a lewd woman, and that the house or place kept by her bears the general reputation of being a lewd house or place of prostitution, and that the women there at that house bear the general reputation of being lewd women, and that men were seen to frequent the place by day and by night." Reputation for lewdness may be a circumstance tending to show the character of the house, but the probative value of this circumstance is for the jury alone; and the facts and circumstances adduced in any case must reasonably satisfy the jury that the house was maintained for the purpose of prostitution, and that adultery or fornication was actually committed, and not merely that the reputation of the house or of its inmates is bad.

Indictment for keeping lewd house; from Crisp superior court —Judge Whipple. July 7, 1908.

Submitted October 6,—Decided October 26, 1908.

*Crum & Jones,* for plaintiff in error.

*W. F. George, solicitor-general,* contra.

RUSSELL, J. Marie Coleman was convicted of the offense of keeping a lewd house, and excepted to the overruling of her motion for a new trial. Several witnesses testified, that the defendant kept and maintained a house which had the general reputation of being a lewd house; that the defendant and the other women living there had the reputation of being lewd women; that men frequented the house at all hours of the night and day; that when the women appeared on the streets they were nicely and neatly dressed, and, so far as witnesses knew, they were not married and had no lawful vocations. One of them, a policeman, said that he had been to the house several times to serve processes and papers and had seen the women walking about the house, rather loosely dressed, in company with men who did not board there; and had heard them engaged in profane and vulgar conversation. He had also seen the women drinking with the men.

1. The motion to dismiss the bill of exceptions is based on alleged errors prior to the judgment overruling the motion for a new trial, and is governed by *Bryan* v. *State,* 3 *Ga. App.* 26 (59 S. E. 185).

2.   The controlling question in the case arises upon an excep-
tion to the following excerpt from the charge of the judge: "In
order to make out a case of that kind, it is not incumbent or
necessary for the State to prove that there were really acts of
adultery or fornication committed at such place as alleged.   It
would be sufficient if the State proves to your reasonable satisfac-
tion that she bears the general reputation of being a lewd woman,
and that the house or place kept by her bears the general reputa-
tion of being a lewd house or place of prostitution, and that the
women there at that house bear the general reputation of being
lewd women, and that men were seen to frequent the place by day
and by night."

A person who maintains a place where fornication or adultery
is practiced is guilty of the offense of keeping a lewd house.
Penal Code, §391.   The practice of adultery or fornication at the
house is the very gist of the offense; and the State must prove
that fact beyond a reasonable doubt, before the jury would be au-
thorized to convict the defendant.   The method by which the ulti-
mate fact may be proved is a different matter; but it must be
proved either by direct or circumstantial evidence.   The jury may
infer the existence of the fact from relevant and probative circum-
stances; and where the circumstances detailed in the charge of the
judge appear in the evidence and the jury find the defendant
guilty, the verdict will not be set aside on the ground that it is
without evidence to support it.   *Mimbs* v. *State,* 2 *Ga. App.* 387
(58 S. E. 499); *Hogan* v. *State,* 76 *Ga.* 82.   But the jury were
not bound to find the defendant guilty, even though they believed
the circumstances in fact existed; because they might have taken
the view that they could not infer therefrom beyond a reasonable
doubt the ultimate fact which alone would legalize the conviction.
When the judge charged the jury that "it is not incumbent or
necessary for the State to prove that there were really acts of
adultery or fornication committed at such place," he made an in-
accurate statement of the law.   The error was not cured by the
subsequent statement that if the jury believed the circumstances
enumerated, that would be sufficient evidence.   As was said by
Judge Bleckley, in the case of *Kinnebrew* v. *State,* 80 *Ga.* 232,
237 (5 S. E. 56), "The logical sufficiency of the facts to warrant
the inference, and also, the existence of the facts themselves, ought

to be left to the jury for their determination. . . The judge can not pilot the jury in their passage by inference from fact to fact, but he can point out the line of transit which the law authorizes them to follow if they think the facts in evidence sustain them in taking that route. . . To instruct them that they are legally authorized to infer one thing from another, or from certain others, but that they are to decide for themselves both whether the given premises are true, and whether the inference can and ought in fact to be made, is only to say that the law permits them to reason in the manner indicated, if they determine that the evidence and the ordinary test of human experience warrant them in so doing. It is but to tell them that the law will be satisfied if they are, and that they will not have done a vain thing. No doubt there is danger of intimating an opinion, or of leading the jury to think that an opinion is intimated, though the purpose be only to discriminate between legal and logical sufficiency; and this danger is not lessened, but rather increased by the fact that in most instances the one kind of sufficiency exists wherever the other does." The learned Chief Justice then cites and reviews a great number of cases, and illustrates how and when the judge may instruct the jury that, if they believe certain facts, they may infer another fact essential to conviction. He demonstrates that the judge is on dangerous ground, in view of the "dumb act," when he begins to instruct the jury in the rules of logic, and to tell them what conclusions they may draw from stated premises; and in no event should the jury be instructed that it is their duty to draw the inference which they would be authorized to draw.

In the case at bar the charge of the judge in all probability took from the jury their right to acquit the defendant under the evidence introduced before them. The jury had a legal right to acquit the defendant, even though they believed all the State's evidence, if that evidence failed to satisfy them beyond a reasonable doubt of the existence of the ultimate fact which is the gist of the offense charged, to wit, that acts of adultery and fornication had been practiced at the house which the defendant is alleged to have maintained. The charge was apt to make them believe that under that evidence they had no discretion but to bring in a verdict of guilty. Compare *Patterson* v. *State*, 85 *Ga.* 131 (11 S. E. 620); *Hayden* v. *Neal*, 62 *Ga.* 365. *Judgment reversed.*