### 3687.   FITZGERALD v. THE STATE.

1. A house may be a "lewd house," within the purview of section 382 of the Penal Code (1910), which makes it criminal for any person to maintain a lewd house or place for the practice of fornication and adultery, though the house may be devoted chiefly to the carrying on of some other vocation (a boarding-house or hotel, for example), if lewd women are accustomed to frequent there and to carry on their practices therein.

2. In order to convict an innkeeper of maintaining a lewd house, on the theory that, along with other guests, he allows lewd women to stop at his inn and ply their vocation, it is necessary to show that the innkeeper

had knowledge, actual or implied, of the unlawful practices that were going on. Such knowledge may be shown directly or circumstantially, and, where the accused himself was in personal charge of the inn, one of the methods by which he may be charged with this knowledge is to show that his house had acquired a general reputation in the community of being a place in which fornication and adultery were commonly practiced; the sufficiency of such testimony being for the jury.

3. It is no ground for the exclusion of the testimony of one who swears that he knows the general reputation of a house, or of a person, as to lewdness, that he can not tell the number of persons whom he has heard speak of the matter, or give the names of those from whose conversation he has gained his knowledge of the general reputation as to which he testifies. His examination and cross-examination go to the jury together, to be given such weight as it seems to them to be entitled to under all the circumstances disclosed by his testimony as a whole.

4. "The hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted." Words may constitute conduct, and, when that conduct is otherwise relevant in the case, the fact that the person used these words may be proved, notwithstanding the ordinary rule against the admission of hearsay.

5. It is not necessary, in order to make out the offense specified in section 382 of the Penal Code (1910), that the State should show any particular act of fornication or adultery to have been committed, if the evidence, either directly or circumstantially, is such as to satisfy the jury that the house was kept and maintained as a lewd house; that is, if, notwithstanding lack of proof as to any particular act, the circumstances are such as to satisfy the jury that the practice of fornication and adultery actually went on in the house.

DECIDED NOVEMBER 7, 1911.

Accusation of keeping lewd house; from city court of Valdosta —Judge Cranford. August 18, 1911.

*Whitaker & Dukes, E. K. Wilcox,* for plaintiff in error.

*James M. Johnson, solicitor,* contra.

POWELL, J. The defendant was indicted for violating section 382 of the Penal Code (1910), which makes it a misdemeanor for any person "to maintain and keep a lewd house or place for the practice of fornication or adultery, either by himself or others." The State relied on what is the usual method of proof in such cases, namely, proof by witnesses that the house in question had a general reputation of being a lewd house, and that certain women who lodged there from time to time had a general reputation of being lewd women, supplemented by proof of certain specific acts of conduct which took place from time to time, and which were indicative of the fact that fornication was probably going on in the house. Only one act of sexual intercourse was directly proved, and it was

not shown that the defendant personally knew of this act. The house in question was operated by the accused as a restaurant and lodging-house, or a cheaper form of hotel. The proof showed that some good people lodged there from time to time, and that some lewd women stayed there at periods of greater or less duration. The defendant and his son personally conducted the house and looked after the comfort of the guests.

1. One of the points stressed in the argument raises the question as to whether a house devoted chiefly to other purposes may also be a lewd house, within the purview of the statute. It is insisted that merely for an innkeeper to furnish lodging to guests of a lewd character, who, with his knowledge or by his connivance practice fornication in the house during their stay there, more or less transient, does not render the proprietor indictable for maintaining a house for the practice of fornication. We think that a house may be a lewd house, within the purview of the statute, although it is devoted also to other purposes; and if an innkeeper furnishes lodging to lewd guests, and allows them, with his knowledge or acquiescence, to carry on their unlawful practices in his house, he is guilty of violating the statute, notwithstanding the greater portion of his guests may be decent people, and notwithstanding the greater portion of the business carried on in the house may be of a legitimate nature.

2. In order to convict the proprietor of a lodging-house of maintaining it as a lewd house, it is necessary to show, directly or circumstantially, that he knew of the lewd practices which were going on therein, or, if he did not positively know of them, that he was in possession of such facts as to charge him with what is commonly known as "constructive knowledge." He can not shut his eyes to what is going on around him, for the purpose of avoiding knowledge, and then defend on the ground of his lack of knowledge. The plaintiff in error contends that the evidence was insufficient to charge him with knowledge in the present case; no actual knowledge being directly shown. After carefully reading the record, we can not sustain this contention. In the first place, it is shown that the house had achieved a general reputation in the community of being a lewd house, and that the accused himself personally conducted the place. This alone would be sufficient to authorize the jury to believe that he had such knowledge of the situation as to

charge him with culpability. The most common method of making out a prima facie case against a person for maintaining a house of this kind is to show that the house bears such a general reputation in the community, and that the accused, being the proprietor, was a member of the community. Proof of this kind alone has been held sufficient to convict, doubtless on the theory that a person living in a community would hardly be ignorant of a condition which relates to his own affairs and which has become so public and notorious as to be a matter of common information. It is possible, though hardly probable, that such a course of conduct could habitually take place in a house which a person was managing as to call the attention of the community to its lewd character, and as to make it a matter of general reputation in the community, without that person knowing something of this conduct. At any rate, it is almost always considered by the courts as sufficient proof to convict (so far as this element of the case is concerned) to show that the house bears the general reputation of being a lewd house. Besides that, in this case there were certain transactions between women and men which occurred in the presence of the accused, and which ought to have informed any reasonable man that his house was being used for purposes of prostitution. Indeed, in the light of all the evidence, it is hardly probable that the things which the witnesses swear took place could have occurred without a reasonably watchful innkeeper knowing that lewd women were making a resort of his house for the purpose of carrying on their practices.

3. A motion was made to exclude the testimony of a certain witness, who, on direct examination, had testified that the reputation of the house was bad, and that the general reputation of the women who stayed there was that they were lewd, and, on cross-examination, testified that he had heard people on the streets talking about it; that he could not tell how many, but that he was sure there were as many as half a dozen, and maybe more; that he could not be exact as to how many; and that he knew nothing of the place of his own knowledge. The objection to this testimony was that the witness disclosed that he did not have such a knowledge of the general reputation of the place as to make his testimony admissible on that subject. We think that his testimony was properly admitted. The witness qualified by stating that he knew the general reputation. This rendered his testimony prima facie admis-

sible. It was allowable for the accused, on cross-examination, to show the extent of his knowledge as to the general reputation, and if the cross-examination had disclosed that he had no knowledge of the general reputation of the place, it would have been the duty of the court to exclude the testimony. We do not think that the cross-examination was such as to disclose the witness's lack of knowledge of the reputation of the place.

General reputation is what people in a community commonly say as to a thing. A person may know it, without having talked to very many in the community. He may know it without being able to give the names of any great number of persons with whom he has conversed on the subject. For instance, there are many of us who know that this man or that bears a good or bad general reputation in the community, and yet, if we were called upon to give the names of those persons with whom we had discussed the character of the person in question, we would find it difficult to furnish the names. The common consensus of popular opinion on the subject may be firmly fixed in our minds, though we have forgotten or are unable to recall the separate transactions or conversations from which we gained our knowledge of the matter.

4. The court permitted a witness to testify, that he was on a train one day coming into Valdosta (where the house in question was); that he sat on a seat by himself; that a woman came up and engaged him in conversation, and asked him where he was going; that he told her that he was going to Valdosta; that she said she was going there, too; that he asked her if she was going to visit relatives; that she said, "No," she was up "on a pleasure trip," and stopping at the defendant's house; that she then said "I charge $2 for my pleasure." He further testified that when the train reached Valdosta the woman got off and did in fact go to the house of the defendant. This testimony, so far as it related to the conversation on the train, was objected to on the ground that it was hearsay, and the court overruled the objection. One of the ways of proving that a house is a lewd house is to prove that it is frequented by lewd women. Of course, for a lewd woman to go to a house on a single occasion would not characterize it as a lewd house; and if this evidence, which was objected to, stood alone, there would be no doubt that it would be wholly inadequate to authorize a conviction. It would be necessary to show many other things, one

of which would be knowledge, actual or constructive, on the part of
the accused that this woman who went to his house was a lewd
woman. This testimony, if admissible at all, was only a link in the
chain of circumstantial evidence. It must be remembered, how-
ever, that the State would be permitted to show by a number of
different witnesses that on a number of separate occasions individ-
ual lewd women went to the defendant's place, for the purpose of
showing that they went there in such numbers as that he must
have known that his house was being used as a lewd resort. There-
fore the real point raised by the objection before us for decision
is whether the woman's language, used on the train, could be
proved for the purpose of showing that she was in fact a lewd
woman.

The defendant contends that her conversation (in the absence
of the defendant) could not be proved for the purpose of showing
the lewdness of her character—that it was mere hearsay. As Pro-
fessor Wigmore says in his work on Evidence (section 1768):
"The prohibition of the hearsay rule, then, does not apply to all
words or utterances merely as such. If this fundamental princi-
ple is clearly realized, its application is a comparatively simple
matter. The hearsay rule excludes extrajudicial utterances only
when offered for a special purpose, namely, as assertions to evi-
dence the truth of the matter asserted." Words, like acts, may con-
stitute conduct, and the expression "verbal acts," is not uncom-
monly found, and it is used to express the notion of words having
probative value as conduct. Now, if this woman in question had
been guilty of lewd conduct on the train, had committed such acts
as in the minds of all reasonable men would have characterized
her as a whore, certainly the State could have proved those acts,
though committed outside of the defendant's presence, for the pur-
pose of showing that she was a lewd woman, and could have coupled
this with other evidence showing that this woman, thus proved lewd,
had subsequently stayed in the defendant's house. Indeed, in the
present case, the State proved the lewdness of a number of boarders
at the defendant's inn by showing that they had previously resided
in known lewd houses, and counsel seem to have conceded that this
form of proof was allowable. The language a woman uses may
tend to characterize her as a whore with almost the same certainty
as lascivious conduct short of the very criminal act itself. To the

ordinary man's mind, for a woman to approach him and to solicit him to have sexual intercourse with her for 'money would prove her character as a public prostitute, just as much as it would for her to be seen in a lewd house, or to be seen making any of those lascivious displays of herself which are commonly understood as portraying the arts and artifices of a whore. The State in this case puts in evidence this woman's words, in which she says to a stranger, whom she approaches upon the train, that she sells what she called "her pleasure" for $2, not for the purpose of proving as the ultimate fact that the woman did sell "her pleasure" for $2, but for the purpose of proving the character, of the woman who thus used language consistent only with the abandoned state of mind of the public prostitute. We think that in this view of the case the evidence was admissible as verbal conduct, as a link in the chain of circumstances by which the guilt of the accused was to be proved. Furthermore, even if there be any doubt about the soundness of this conclusion, the result would be the same; for the admission of this testimony, even if erroneous, is, in the light of the whole testimony in the record, merely such an immaterial incident upon the trial as not to require a new trial.

5. Exception is taken to the following charge of the court: "It is not necessary, in order to make out the offense charged, that the State shall prove that any particular act of fornication or adultery was committed, if you are satisfied that the house was kept as a lewd house." Counsel cite *Coleman v. State,* 5 *Ga. App.* 766 (64 S. E. 828). In that case the court charged the jury that "it is not necessary for the State to prove that there were acts of adultery or fornication committed at such house." The court further charged the jury that "it would be sufficient if the State proves to your reasonable satisfaction that she [the accused] bears the general reputation of being a lewd woman, and that the house or place kept by her bears the general reputation of being a lewd house or place of prostitution, and that the women there at that house bear the general reputation of being lewd women, and that men were seen to frequent the place by day and by night." This court held that the charge just quoted was erroneous, that it was necessary for the State to prove that acts of adultery and fornication were committed at the house, and that it was not sufficient for the State merely to convince the jury that the house or the women bore the

reputation of being lewd. We pointed out that the ultimate thing which the jury were required to find, before they could lawfully convict the defendant, was that the house was devoted to the practice of adultery or fornication, and that while that fact may be proved by the reputation which the house and its inmates bore, together with corroborative circumstances, and without proof of specific acts of adultery or fornication, still that unless the jury, from this reputation and the other corroborative circumstances, believe that the practices referred to really went on, they would not be authorized to convict. It seems to us that the present charge very clearly conveyed to the minds of the jury the exact distinction which the court made in that case, namely, that they could convict, though the State did not prove any particular act of fornication or adultery, if the evidence satisfied them that the house was kept and maintained as a lewd house; that is to say, as a house in which fornication or adultery was actually practiced. The *Coleman* case and the cases therein cited clearly show that a conviction may be had in such cases without proof of any particular act of fornication or adultery, and that to show that a house is maintained and kept as a lewd house is sufficient to authorize the jury to believe that, despite the State's failure or inability to show a particular act, the unlawful practice was nevertheless carried on. After carefully considering the alleged errors, we find no reason for the granting of a new trial.                    *Judgment affirmed.*