10240. WILKES *v.* THE STATE.

A conviction of the offense of maintaining a lewd house was not authorized by the evidence.

DECIDED MAY 13, 1919.

Accusation of misdemeanor; from city court of Swainsboro—Judge Kirkland. November 2, 1918.

*I. L. Price, I. W. Rountree,* for plaintiff in error.

*Alfred Herrington Jr., solicitor,* contra.

STEPHENS, J. "To authorize conviction in a prosecution for the offense of keeping a lewd house, it is not enough to prove the general reputation of the house, or of its inmates, or both; for the gist of the offense is that the house was kept 'for the practice of fornication or adultery;' and the jury must be satisfied that acts of lewdness were practiced in the house, and that it was maintained for the purpose of prostitution. Reputation for lewdness, however, may be a circumstance tending to show the character of the house, and may be considered by the jury in corroboration of such facts and circumstances as may reasonably satisfy them of the essential fact that fornication or adultery was actually committed therein." *Smith* v. *State,* 13 *Ga. App.* 241 (2) (79 S. E. 51). The above is a correct statement of the law applicable to cases of this kind. In the case under consideration the evidence

shows that the defendant and her house, where she had resided only a few months, bore a reputation for lewdness. "Such evidence alone, wholly uncorroborated, is not sufficient to establish the offense of keeping and maintaining a lewd house." *Jones* v. *State*, 2 *Ga. App.* 433 (7) (58 S. E. 559). The only attempt at corroboration is evidence of an admission of the defendant that she had suffered from a venereal disease (but it is not shown when she was. so afflicted) and evidence from a number of witnesses that men were seen at her house on several occasions, but nowhere was there a scintilla of evidence that the least immoral conduct transpired there. The men visiting the house did so in the daytime, and were observed at the place by passers-by; which latter fact refutes rather than corroborates the idea that immoral conduct was carried on. One of the witnesses visited the house and saw three men there. He stated that "there was nothing wrong done there that I saw." This was substantially the testimony for the State. None of it authorizes the inference that acts of fornication or adultery were practiced in the house. The circumstances corroborative of reputation for lewdness, that would under the authorities authorize a conviction of the offense of maintaining a lewd house, must be such circumstances as tend to show lewd and lascivious conduct at such house, and from which it might reasonably be inferred that fornication or adultery took place there.

The case of *Ward* v. *State*, 14 *Ga. App.* 110 (80 S. E. 295), sustains this view. The evidence adduced upon the trial there was held insufficient to authorize a conviction of maintaining a lewd house. Judge Russell in the opinion in that case said: "It appears from the record that the defendant lives with her daughter in the outskirts of the City of Rome, and that the house she occupies has the general reputation of being a lewd house. According to the testimony her daughter, though quite young, has the general reputation of being a lewd woman. The defendant's son and one John Fowler also live at the house, which the defendant states she purchased with her own labor. There is no direct evidence that any act of adultery was committed in the house, nor any circumstance indicating that such an act was committed there, unless it can be assumed that Fowler was capable of, and, having had the opportunity by reason of his propinquity, was guilty of, the sexual act, with either the mother or the daughter. There

is evidence of noise and disorder which might authorize the conviction of the defendant of the offense of keeping a disorderly house; but the defendant was not accused of keeping a disorderly house, and she has been accused and convicted of keeping a lewd house. We think the learned trial judge erred in ruling upon the testimony to which objection was made, and that the pertinent evidence submitted by the State is insufficient to have authorized the conviction of the defendant. Testimony as to the general reputation of the house for lewdness was properly admitted, and there was no objection to the testimony in regard to the general reputation of the defendant's daughter who lived with her at the house, and who was proved to have a bad reputation; but timely objection was made to the testimony of each of the witnesses who testified that the defendant herself had the reputation of being a lewd woman. . .

"We do not think the evidence in the present case was sufficient to authorize the conviction of the defendant. There is no circumstance which, to the exclusion of every other reasonable supposition, could satisfy the jury that the house was used for the practice of fornication or adultery. Even if it had been proved that a single act of immorality such as referred to above was committed, this alone would not have been sufficient to show that the house was kept or maintained for that purpose; though had there been such proof, we think the circumstances and the reputation of the defendant's daughter, and of the house, might have supplied sufficient corroboration to sustain the charge, by authorizing the inference that what was done was, in all human probability, repeated. The incriminatory proof in this case is confined to the matter of reputation, and, as was held in *Coleman* v. *State,* 5 *Ga. App.* 166 (63 S. E. 244), and in *Smith* v. *State,* supra, this alone is insufficient to authorize conviction. There was evidence that men were seen to go to this house by day and by night, and that there was some boisterousness and other noise likely to disturb the neighborhood. This might have authorized a conviction of the statutory offense of keeping a disorderly and ill-governed house (Penal Code, § 383), because the defendant admitted that it was her house and in her charge; but the mere fact that men went to the house and came away under the influence of liquor, and during their stay were noisy and boisterous, would as reasonably suggest the

inference that they visited the house to obtain intoxicating liquor, in violation of law, as that their visit was with the intent to be guilty of immoral practice, which ordinarily is not accompanied by much noise.

"Evidence of the general character of the inmates of the house is merely corroboratory evidence, and is of itself insufficient to authorize conviction. The point can well be illustrated by the case of numerous reformatory institutions which a progressive and most commendable philantropy is attempting to maintain. A case can be conceived of where all of the immates except the matron might be girls or women whose reputation for chastity was bad; and in the work of reformation it might be economical, convenient, or otherwise desirable to use a house which had not borne a good reputation. If the rule were as contended on the part of the State in the present case, those at the head of each of these institutions could very promptly be convicted of keeping a lewd house on proof of the general reputation of the inmates."

The facts in the *Fitzgerald* case, 10 *Ga. App.* 71 (72 S. E. 541), and in the *Basil* case, 22 *Ga. App.* 765 (95 S. E. 259), are entirely different from the facts in the case now under consideration. In each of these cases the evidence shows that the house in question was a city hotel of a bad reputation, infested with numerous notoriously lewd women, who made dates with men to meet them there, and occupied rooms there and slept there with men who were not their husbands. Such evidence, of course, authorized a conviction of maintaining a lewd house, as was held in both of those cases. It not only authorized but even demanded the inference that acts of fornication and adultery were practiced there. In the *Coleman* case, supra, the question of whether the evidence was sufficient to support the verdict was not decided. Judgment in that case was reversed on an erroneous charge of the court. It was there held to be error to instruct the jury that "it would be sufficient if the State proves to your reasonable satisfaction that she bears the general reputation of being a lewd woman, and that the house or place kept by her bears the general reputation of being a lewd house or place of prostitution, and that the women there at that house bear the general reputation of being lewd women, and that men were seen to frequent the place by day and by night."

According to the authorities above cited, the mere presence of men at the defendant's house, who could be seen from the streets, and whose conduct was in nowise improper or suggestive of lewdness, was not sufficient corroboration of the evidence that either the house or the defendant possessed a bad reputation, to authorize her conviction of the offense of maintaining a lewd house. She was convicted upon bad reputation alone, which is not sufficient. She certainly could not be condemned for indulging in the company of men visitors at her home who visited there at seasonable hours, and whose conduct on such occasions was perfectly exemplary so far as the evidence shows. The evidence, moreover, shows that the defendant did some farm work, and therefore presumably had some means of support.

In our opinion the evidence was wholly insufficient to authorize the verdict, and the court erred in overruling the motion for a new trial.

*Judgment reversed. Bloodworth, J., concurs. Broyles, P. J., concurs specially.*

Broyles, P. J. I agree that under the particular facts of this case the conviction of the defendant was unauthorized. I do not, however, concur in all that is said in the opinion of the majority of the court.