ELDER *v.* STARK, Solicitor-General.

454

No. 15383.   February 21, 1946.

*G. A. Johns* and *James W. Arnold,* for plaintiff in error.

*Hope D. Stark, Solicitor-General,* and *Joseph D. Quillian,* contra.

CANDLER, Justice. (After stating the foregoing facts.) Certain common nuisances are defined, and provision is made for their abatement, by the Code, § 58-109, which reads: "The following are hereby declared to be common nuisances and may be abated as such upon complaint of the Attorney-General, or the solicitor-general of the circuit, or any citizen or citizens of the county;

(1) Any rooms or structures used for the unlawful manufacture, sale, keeping for sale or other unlawful disposition, of the liquors and beverages mentioned in section 58-101, or any of them; (2) all houses, shops or places where the said liquors and beverages, or any of them are sold, bartered, kept for sale or otherwise disposed of, to be drunk on or near the premises, or where such liquors or beverages, or any of them, are kept for the purpose of sale or other unlawful disposition thereof; (3) all places of resort where persons are permitted to resort for the purpose of drinking such liquors or beverages, or any of them, mentioned in section 58-101, on or about the premises; (4) any public eating place where the said liquors and beverages, or any of them, mentioned in section 58-101, are sold or served for beverage purposes. (Acts 1915, Extra Sess. p. 83.)" The Code, § 58-101, provides: "The term 'prohibited liquors and beverages,' used in any law to promote temperance or to suppress the evils of intemperance, shall include the following: (1) alcohol, alcoholic liquors, spirituous liquors and all mixed liquors, any part of which is spirituous, foreign or domestic spirits, or rectified or distilled spirits; absinthe, whisky, brandy, rum and gin; (2) vinous liquors and beverages; (3) nothing in this Chapter shall apply to fermented beverages made from malt, in whole or any part, or any similar beverages. (Acts 1915, Extra Sess., pp. 77, 79; 1935, p. 79.)" A "blind tiger" is declared a nuisance, and provision is made for its abatement or injunction, by the Code, § 58-110, as follows: "Any place commonly known as a 'blind tiger,' where spirituous, malt, or intoxicating liquors are sold in violation of law, shall be deemed a nuisance, and the same may be abated or enjoined as such, as now provided by law, on the application of any citizen or citizens of the county where the same may be located. (Acts 1899, p. 73.)" In the recent case of *Davis* v. *Stark,* 198 *Ga.* 223 (31 S. E. 2d, 592), this court said: "The resolute purpose of the legislature to protect the public against the evils of such common nuisances is manifested by the provisions of the Code, § 58-107, where it is in substance declared that the keeping of any of the prohibited liquors or beverages in any building not exclusively used for a dwelling 'shall be prima facie evidence that they are kept for sale or with intent to dispose of same contrary to law;' and the provisions of the Code, § 58-122, which declare that any and

all the property used in such illegal keeping of liquors . . is contraband, in which the owner has no property right, and authorize the State to destroy or seize them. In providing for the abatement of such a nuisance rather than reliance upon criminal prosecution and an order of court enjoining it, both of which are subject to evasion, the legislature has by the law authorizing abatement made available an immediate and effective remedy for a complete removal of any injurious effect of such nuisances upon the public. In view of the provisions of the statutes and decisions of this court, there is now no room for reasonable doubt of the validity of the statutes and the authority of the trial court to render judgments giving full effect to the law."

■ It is insisted by the plaintiff in error in one of his special grounds that the trial court erred in admitting, over objections, testimony of witnesses for the solicitor-general to the effect that the general reputation of Pinellas for being a blind tiger is bad. The objections were: "There is no law authorizing it; the legis-· lature has not spoken on that question, and not having spoken, refuses to confer the power to condemn a place by general reputation, unless the evidence has been admitted by law." It will be observed from the statement of facts that the testimony as to general reputation was only a part of the evidence in behalf of the plaintiff. Our appellate courts apparently have not heretofore decided whether or not testimony of general reputation in an action of the present kind is admissible. However, in a criminal prosecution for maintaining a bawdy house or lewd house, evidence as to the general reputation of the house is competent. *Hogan* v. *State,* 76 *Ga.* 82 (3) ; *Brindle* v. *Copeland,* 145 *Ga.* 398 (2) (89 S. E. 332) ; *Mimbs* v. *State,* 2 *Ga. App.* 387 (58 S. E. 499). Evidence as to the general reputation of the inmates of a lewd house is admissible. *Brindle* v. *Copeland,* supra; *Coleman* v. *State,* 5 *Ga. App.* 766 (2) (64 S. E. 828) ; *McCain* v. *State,* 57 *Ga.* 390, 391 (1). But it was said in *Jones* v. *State,* 2 *Ga. App.* 433 (7) (58 S. E. 559), that "such evidence alone, wholly uncorroborated, is not sufficient to establish the offense of keeping and maintaining a lewd house." See also *Wilkes* v. *State,* 23 *Ga. App.* 727, 728 (99 S. E. 390). On a criminal charge of operating a gaming house, evidence as to general reputation is admissible. *Bashinski* v. *State,* 122 *Ga.* 164 (50 S. E. 54). In *Martin* v.

*State,* 62 *Ga. App.* 902 (10 S. E. 2d, 254), which was an opinion by two of the three judges constituting a division of the Court of Appeals, it was said: " 'The reason why disorderly houses were considered a nuisance may in general be said to be because they tended to draw together idle and dissolute persons engaged in unlawful or immoral practices, thereby endangering the public morals or peace.' 18 C. J. 1234, § 3. It is apparent that a disorderly house having as its evil elements immorality, gaming, vagrancy, illegal operation of slot machines, illegal purchases of whisky and beer, and the like, is provable, at least as to several of its elements, by evidence of general reputation, though insufficient of itself to prove the completed offense. Basically such a house is a nuisance, and we think, as such, its general reputation would be admissible." In 20 Am. Jur. 407, § 461, it is stated: "By the weight of authority, the reputation of a house is admissible upon the issue as to whether it is a disorderly house." The present case is one where the allegata and probata bring into issue the character of the place or structure as to whether it should be abated as a nuisance for the good of the public under statutes provided for the purpose. It contains elements embracing reasons as cogent for permitting evidence of general reputation as that of bawdy houses, lewd houses, gaming houses or disorderly houses. We hold that the trial court did not err in admitting testimony of general reputation of the place as a blind tiger.

■ Two of the special grounds deal with objections to the admission of testimony as to raids and intoxicants found some time previous to the filing of the present petition. T. L. Carroll testified: "On May 20, 1944, we searched Mr. Elder's place under a search warrant. Back in the bedroom in the rear of the building, we found a small iron safe . . and in it we found ten pints of Seagrams, two four-fifths of a quart, and then some on the outside of the safe." The objection was: "If Mr. Carroll did raid the place on May 20, 1944, and found liquor there, the supposition of law is that the whisky was confiscated on May 20, 1944, and evidence of that fact would not be admissible under the public-nuisance law September 20, 1944, or four months later." H. W. Irvin testified: "In December 1943, I together with . . officers raided Mr. Elder's place known as Pinellas . . and in it was eleven fifths of gin and one pint of whisky. We seized it

and turned it over to the sheriff." The objection, in substance, was the same as that offered to the testimony of Carroll. Under the allegations and evidence in the present case, an abatement or injunction might have been had under the law of 1915 (Code, § 58-109), or the "blind tiger" act of 1899 (Code, § 58-110), or both. The evidence as to the operation of the place, after the previous raids, in the same general manner and with the buildings still containing secret panels, traps, with other like evidence, was sufficient to sustain the allegations of the petition that the operation was "continuous, in flagrant violation of law." Because the proof shows continuity and intention to operate the place in violation of the law after the previous raids and confiscations, the present case is distinguished from *Thornton* v. *Skelton*, 149 *Ga.* 93 (99 S. E. 299). See also *Bracewell* v. *Cook*, 192 *Ga.* 678 (16 S. E. 2d, 432). There was no error in these special grounds for any reason assigned.

■ Another special ground complains of the admission of testimony of a witness who testified: "I have seen people come from his [Elder's] place under the influence of liquor. There was a fellow had a wreck out there and run into my rock wall. He said he come from there [meaning Elder's]. In a little bit a man came behind him. He said he wanted to race him down the road. Both men were under the influence of liquor. He said he was at Mr. Elder's place and he wanted to race him down the road and he wouldn't race with him. That was the first thing he said when he got out of the car." The objection urged was that "whatever may have been res gestæ at Elder's would not be res gestæ at Mr. Pressley's place." No objection was made that the testimony was hearsay and as such inadmissible. The objection as made and urged presents no question for decision by this court. Assuming that the admission of the testimony complained of was harmful, which we do not now decide, no question of res gestæ is properly presented, and in the absence of objection to the testimony as hearsay, there is nothing in this special ground to be decided.

■ Following the testimony of a witness for the plaintiff as to the raid of September, 1944, the trial court allowed in evidence a pint and a portion of a pint of whisky over the objection that the law allows a man to have a quart of whisky in his possession if

legally bought, and the contention of the defendant in the court below that Government whisky is presumed to be legal until the evidence shows otherwise. In admitting this evidence the trial court stated: "The whisky is admitted. It would be for the jury to say from all facts and circumstances whether or not it was lawful or unlawful possession, the law being it may be lawful to have and possess no greater quantity than that amount that has been testified to, provided that it is done for the purpose of one's own private consumption without any intention to use it for illegal or unlawful purposes." Under section 23-B of the Revenue Tax Act to Legalize and Control Alcoholic Beverages and Liquors (Ga. L. Ex. Sess. 1937-38, pp. 103, 122; Code, Ann. Supp., § 58-1073), it is .provided: "It shall not be unlawful for any person to have and possess *for use and not for sale,* in any county of the State, one quart of the liquors and beverages described in this Act [Chapter], *which may have been purchased by the person for use and consumption* from a lawful and authorized retailer and properly stamped, and this section shall be construed to repeal any and all laws in conflict with this section and Act [Chapter] as herein expressed." (Italics supplied.) One of the issues in the present case was whether the whisky was for personal use or for sale. Under the purpose for which the trial court admitted it in evidence, there was no error.

In the same special ground, it is insisted that it was error to admit in evidence several bottles of wine, some labelled "alcohol 18% and 20%," over the objection that there was no evidence of the sale of wine, but evidence only of the possession, the chairman of the county commissioners having testified that no election had been called for the people to vote on the question. Possession of the wine was not the primary or sole question in the present case; but possession of the wine in the quantities found may have been a circumstance to illustrate the contention of the plaintiff that the place was a public nuisance, especially since the other evidence disclosed that no license had been issued by the county commissioners for the sale of wine; and the quantity of wine found might have been a circumstance in itself for the jury to consider as to whether the place complained of was operated in violation of law. There was no error in admitting in evidence the whisky or the wine for any reason assigned by the plaintiff in error.

■ The plaintiff in the court below introduced in evidence certified copies of records maintained in the office of the Collector of Internal Revenue, purporting to show issuance to E. H. Elder, Elder's Pinellas, licenses as a wholesale and retail dealer in intoxicating beverages, bearing date from July, 1943, to July, 1944. This evidence was objected to on the grounds that the licenses had already expired, and that such evidence was nothing but a letter memorandum. As previously pointed out, the allegations and proof tended to show that the operation of the place in question was continuous over a period of months and years, and the continuity was one of the circumstances illustrating the character of the place of business. Under the circumstances, the licenses were relevant, even though they might have expired a few months before the last raid resulting in the padlocking of the buildings. Although there was an objection that the evidence was nothing but a letter memorandum, such evidence was in the form of certified copies of official records. It was not suggested or urged by the plaintiff in the trial court that there was higher or better evidence of the facts sought to be proved. For the reasons stated, no error appears in this special ground.

■ Objection was made to a portion of the testimony of Sheriff Camp as follows: "I believe it was a combination license. I took down the numbers and brought them in. I believe he also had a wholesale-whisky sign up over the door in the rear and down in the back where the entrance was. The agent with us said that it was a wholesale-liquor sign issued by the Government." The objection urged at the time to the admission of this testimony was: "They had Mr. Irvin on the stand and never offered to prove that fact by him. That would have been the highest and best evidence." Such objection as made does not suggest or urge that the testimony might not have been admissible on the ground of hearsay. The mere fact that the same testimony could have been given by some other witness does not show any valid reason why it was inadmissible under the objections actually made.

■ It is urged that the trial court committed error in admitting a regulation of the United States regarding classification as to the sale of wine and liquor, over the objection that it would not throw any light on the case because these are the rules of the Treasury Department and the license speaks for itself. The evi-

dence tended to explain the two types of licenses which had been issued to E. H. Elder for Elder's Pinellas. For that purpose it was competent to go to the jury and there was no error in its admission.

■ It is insisted by the plaintiff in error that the trial judge erred because he explained the contentions of the plaintiff in greater detail than that of the defendant. Our examination of the charge as a whole does not show any unfairness in the proportion of statements as to these contentions. Where the contentions of the defendant were not minutely detailed they were stated in substance. The judge also told the jury that they would have the pleadings out with them, and they could gather for themselves the contentions of the parties. *Woodward* v. *Fuller,* 145 *Ga.* 252, 253 (1) (88 S. E. 974). In his charge, the trial judge further said: "I have stated to you, gentlemen, substantially the substance of the plaintiff's petition as amended and also the defendant's plea and answer. To gather the allegations of the parties in specific detail, you can and should read these papers for consideration, as you will have them out with you when you come to consider the case. They constitute the contentions of the parties, but are not to be considered by you as evidence in the case." In view of the foregoing, this special ground is without merit.

■ Error is assigned upon a portion of the charge, as follows: "Under the law, gentlemen, you are the exclusive judges of the weight of the evidence, and this being so, you will determine for yourselves where the greater weight or preponderance of evidence rests on any question you have under consideration." The complaint is that this charge was confusing to the jury in that it was not definite in its statement as to the preponderance of evidence and its resting place. In order to show that this ground is without merit, it is only necessary to quote the paragraph immediately preceding the one complained of, which preceding paragraph reads as follows: "And the preponderance of evidence by which the plaintiff is thus required under the law to satisfy your minds means the greater weight of evidence. The law defines it as being that superior weight of evidence upon the issues involved, which, while not enough to wholly free the mind from a reasonable doubt,

is yet sufficient to incline a reasonable and impartial mind to one side of the issue rather than to the other."

█ It is complained in one of the special grounds that the trial court erred in submitting to the jury specific questions to be answered as their special verdict. This assignment of error asserts that the present case was not a true equity case, but was a statutory proceeding for the abatement of a public common nuisance, which does not require the interference of equity. It is further complained that there was no request for a submission of the questions to the jury for a special verdict, and that it was error to submit the same over the objections of opposing counsel, made at the time. In the trial of an equity case, the judge may, without request, require the jury to render a special verdict on issues of fact involved. *Robertson* v. *Aycock,* 170 Ga. 524 (4) (153 S. E. 213). While the remedy of abatement or injunction in such cases as the present one is conferred by statute, the relief provided partakes of the nature of an equitable proceeding. The submission of particular questions for a special verdict in a case of the present type, may be, and usually is, in the interest of clarifying the jury's findings, as well as being helpful to the trial court in rendering judgments to give such findings effect. It is not pointed out in this assignment of error that there was any particular reason why the submission of the questions for a special verdict was harmful to the plaintiff in error. This special ground does not show error for any reason assigned.

█ A portion of the charge was as follows: "As to malt liquors, it is a violation of the law in this county for any person to sell beer without having first obtained a permit and a license from the local government authorities for that purpose. This being a place in the county not in a municipality or within the limits of an incorporated town, the Board of Commissioners of Roads and Revenues of this county would be the only government authorities which could lawfully issue to the defendant in this case at this place a license to sell beer. If this defendant at this place and in this county sold beer without having obtained a permit and license from the Board of Commissioners of Roads and Revenues of this county, that would be unlawful, and such sale would be a violation of the law." The plaintiff in error assigns error upon the ground that the court in its charge as to beer used the words "as to

malt liquors," and then proceeded to charge on beer and its sale, and thus, as the plaintiff in error contends, confused the minds of the jury that beer was a malt liquor. The charge is not subject to the criticism made, and we do not think the court committed therein any reversible error.

■ Another portion of the charge was: "The law further provides that the delivery of the liquors and beverages mentioned in section 58-101, which I have just read, or any of them, from any store or building, if any part of the same is used as a public eating place, grocery store, or other place of common resort, shall be prima facie evidence of the sale or unlawful disposition." The plaintiff in error asserts that this instruction was error because there was no evidence of any sale of the prohibited liquors and beverages mentioned. There was ample evidence, circumstantial and direct, of such delivery of the prohibited liquors and beverages to authorize the charge under the Code; § 58-108.

■ It is urged by the plaintiff in error that the trial court erred in entering the decree, and particularly paragraph 3, as follows: "This decree and judgment are kept open for the purpose of considering an application by the defendant for a modification hereof, only for the purpose of converting said buildings and structure, or any part of them into residential building or buildings, and the defendant will be permitted to make such conversion under such provisions as may be further made only, and the said building or structure will in no event be permitted to be used for any commercial business of any kind." For the same reasons hereinbefore set out, showing that it was not error to submit the questions to the jury for their special verdict, it was not error to mold the same into a decree. The whole decree being entered, the particular portion of the decree complained of was not harmful to the defendant in the trial court. He admitted in his answer that he was the operator of the place in question, and as to its operation the place was subject to be closed and padlocked, regardless of any deed that may have been submitted in evidence purporting to show that the title to the property in question was in the name of the wife of the defendant operator.

■ There was ample evidence to support the findings of the jury, and no error is shown by the general grounds.

*Judgment affirmed. All the Justices concur. Head, J., concurs in the judgment, but not in all that is said in the opinion.*