·SPRAYBERRY *v*. WYATT, Solicitor-General.

No. 15951.   November 13, 1947.

*Boykin & Boykin* and *Thomas A. Herndon Jr.*, for plaintiff in error.

*L. M. Wyatt, Solicitor-General*, contra.

BELL, Justice. ■ ▪ As we view this case, the correctness of the judgment complained of depends mainly, if not entirely, upon the evidence as to possession and sale of wine, and the law applicable to such facts. We will first consider the law.

The phrase, "prohibited liquors and beverages," as defined in the official Code, § 58-101, includes "vinous liquors and beverages." By other sections of the Code, it was declared unlawful for any person to sell, offer for sale, keep for sale, or keep on hand at a place of business any of such prohibited beverages and liq-

uors in any quantity, and the commission of any of such acts was made a misdemeanor. Licensing was also prohibited. §§ 58-102, 58-103, 58-123. Another section provided that any rooms or structures used for the unlawful manufacture, sale, keeping for sale or other unlawful disposition, of the liquors and beverages mentioned in section 58-101, supra, or any of them, are common nuisances, and may be abated as such on complaint of the solicitor-general. Code, § 58-109.

The foregoing provisions were codified from the act of 1915, except those contained in § 58-102, which were based both upon that act and the act of 1917. Ga. L. Ex. Sess. 1915, p. 77; Ga. L. Ex. Sess. 1917, p. 18. The language of § 58-109 has been held broad enough to authorize physical abatement by padlocking, where the facts are such as to render the section applicable. *Pullen* v. *Meadors,* 196 *Ga.* 796, 801 (27 S. E. 2d, 655).

But several statutes regarding possession and sale of wine, or "vinous liquors and beverages," have been enacted since the adoption of the Code in 1933, and in this case the question is raised as to whether the Code, § 58-101, supra, would now include "vinous liquors and beverages" as one of the classes of prohibited liquors and beverages therein enumerated. In considering this question, it should be observed that none of the later acts relating to wine expressly amended or repealed any of the foregoing provisions of the Code, and that it is only by implication that any of these laws have been changed. A repeal by implication takes place only in so far as a statute is clearly repugnant to a former statute, and is so irreconcilably inconsistent with it that the two can not stand together, or is manifestly intended to cover the subject-matter of the former and operate as a substitute for it. *Atlantic Log & Export Co.* v. *Central of Ga. Ry. Co.,* 171 *Ga.* 175 (1), 176 (155 S. E. 525).

The wine act of 1935 was a State referendum act, and although it was adopted by the people of the State in a referendum election, it provided for the call of an election in any county to determine whether or not the manufacture and sale of wine should be prohibited in such county. Ga. L. 1935, p. 492, sec. 4. The latter provision was carried forward and made an integral part of an amendatory act that was passed in 1937, and it has not been repealed by any subsequent act, so far as sale is concerned. See

*Thomas* v. *Board of Commissioners of Chattooga County,* 196 *Ga.*
10 (25 S. E. 2d, 647) ; Code (Ann. Supp.), § 58-807; Ga. L. 1947,
p. 1178.

The act of 1935, supra, was also limited in its application to
wine made from Georgia grapes, fruits, and berries, and as to sale
at retail (so far as here material) provided only "that, if any
Georgia producer of wine, or wines, desires to sell his product at
retail, he may do so in any county where such sale is not pro-
hibited by filing with the ordinary of such county an application
in which he shall describe the place at which he desires to retail
such wine, and the ordinary shall keep a list of such applicants
open to public inspection." So, the right even of a Georgia pro-
ducer to sell his product at retail was subject to two conditions,
one of them being that he must file an application with the ordi-
nary describing the place at which he desires to sell such wine;
and the quoted provision was itself repealed and superseded by
the act of 1937, supra. Nor, excepting the act of 1935, has any
statute enacted since the adoption of the Code purported to au-
thorize the sale of wine without a license from some authority,
and this is true even as to counties where the sale is not pro-
hibited by election.

"No person, firm or corporation shall sell, offer for sale, store
or possess for the purpose of selling, wines, without first having
obtained a license appropriate to the type of business carried on
by such person, firm or corporation." Ga. L. 1937, p. 856, sec.
7 (d), Code (Ann. Supp.), § 58-913. For the purpose of the pres-
ent case, it may be assumed that this provision refers only to
licenses or permits issued by the State Revenue Commission, as
provided in section 4 of that act.

The same act of 1937 further provided, in section 8, that "Any
one who knowingly and with intention to evade" the terms of
this act violates any of its terms "shall be guilty of a misde-
meanor and punished therefor as is provided by law." Ga. L.
1937, p. 859, Code (Ann. Supp.), § 58-924. As to license by
municipalities, see Ga. L. 1941, p. 234, sec. 1, Code (Ann. Supp.),
§ 58-804.

In view of the rule, as stated above, as to repeals by implica-
tion, we are of the opinion that wine is still a prohibited beverage
under the Code, § 58-101, in any county where the sale is pro-

hibited by election, and also in any county where the sale is not thus prohibited, if the party selling it has not obtained a license as required by law. In other words, the sale must be in a county where it is not prohibited, and the seller must also have a license permitting him to sell or deal in wine, in order for this beverage to be removed from the operation of the law as stated in the Code, §§ 58-101 and 58-109, supra.

Nothing to the contrary was provided by the act of February 3, 1938 (Ga. L. Ex. Sess. 1937-38, pp. 103-124). That was a "revenue tax act to legalize and control alcoholic beverages and liquors;" and section 12, relating to fortified wines and providing that "nothing in this act" shall be construed to regulate the sale of such wine or wines made from natural fermentation of fruits, grapes and berries and containing an alcoholic content of not more than 14 percent of alcohol by volume, did not in any way purport to legalize the sale of wine regardless of other laws. Code (Ann. Supp.), § 58-1058. The Malt Beverage Act of 1935, however, expressly excepted malt beverages from the law as contained in the Code, § 58-101. See Ga. L. 1935, pp. 73, 79; *Davis* v. *Lanham*, 199 *Ga.* 839 (35 S. E. 2d, 458).

Whether or not the pleadings in this case, including an admission in the answer, should be taken to mean that the sale of wine is entirely prohibited in Carroll County as the result of a county election, the evidence was yet sufficient to show that the defendant did not have a license to sell or deal in wine in that county, since the burden was on him to produce a license, if he did possess wines and make the sales, as claimed by the plaintiff solicitor-general. *Hardison* v. *State*, 95 *Ga.* 337 (3), 339 (22 S. E. 681); *McGehee* v. *State*, 114 *Ga.* 833 (1) (40 S. E. 1004); *Blocker* v. *State*, 12 *Ga. App.* 81 (3) (76 S. E. 784). As a matter of fact, there is no contention that he did have a license.

It follows from what has been said that, if the defendant did sell wine, or keep the same on hand for sale, at his place of business, as insisted by the plaintiff, the judgment abating his place of business as a nuisance cannot be held erroneous upon the theory that such beverage was not a prohibited beverage within the meaning of the provisions of the Code to which reference has been made.

■ Was the evidence in this case as to possessing and selling

wine sufficient to authorize a finding by the trial judge, as the trior of the facts, that the defendant's place of business was a common nuisance, subject to abatement on petition of the solicitor-general, within the purview of Code, § 58-109, declaring certain classes of places or structures to be nuisances and subject to such abatement?  It appears without dispute that on November 30, 1946, the defendant entered pleas of guilty to two charges of selling wine without a license in Carroll County.  This was only about six months before the present suit was instituted on June 2, 1947.  Such pleas of guilty were material circumstances for consideration with the other evidence, although it is doubtless true that the evidence as to these pleas, without more, would not have authorized a finding that the defendant's place of business was a common nuisance, within the meaning of statute, *at the time* the suit was filed.  While Deputy Sheriff Lambert testified that he at one time found thirty-six cases of wine in the defendant's place of business, there was nothing in his testimony to indicate when this particular wine was found.  Assuming therefore that this evidence should not be considered, we lay aside all reference to the thirty-six cases.  But the witness further testified that he had "another fellow," whom he watched, to buy a pint of wine at the defendant's place of business one Sunday "since the first of January, 1947;" also that he saw another sale there "a month or two later," referring to sale of a pint of wine to two State officers, naming them.  These officers also testified to the same effect regarding this transaction.  Lambert further testified as follows:  "Since then I have checked up on it and he had twelve cases of wine, twelve or fifteen.  .  .. That was about two months ago I would say."

The testimony as last quoted would fix the time as being some time during the latter part of April, which would be only about a month before the filing of the suit on June 2; the testimony having been given on June 26, the date of the hearing.

Later on, the witness testified that he visited the defendant's place of business "about two months ago," when the defendant carried him to a little building behind the house and said, "The wine is not in here, it is in the house."

The two State officers mentioned above, in testifying regarding the purchase of the pint of wine to which Lambert had previously

referred, fixed the date as "about a month and a half or two months ago," that is, a month and a half or two months before the hearing on June 26th.

While a single transaction might not be sufficient to authorize abatement of a place of business as a common nuisance, in that the law contemplates some continuity of violation, and the evidence in this case did not show directly any act of possession or sale later than about a month before the suit was filed, yet, in view of the evidence as to pleas of guilty to selling without a license and as to subsequent sales and possession, as just indicated, the judge was authorized to find that the defendant was continuing in such violations of law, and that his place of business was a common nuisance within the statute, at the time the action was instituted.

The defendant introduced an abundance of evidence tending to show that his place of business was patronized by the best people of the community and section, and that the patrons who testified or made affidavits to this effect did not know of any unlawful transaction in reference to the possession or sale of wine, or other matter; but the evidence along this line did not require a finding contrary to the undisputed record evidence as to his pleas of guilty only a few months before the present suit was brought, nor did it conclusively rebut the testimony of the other witnesses as to possession and sale of wine after such pleas had been entered. The judge was authorized to reconcile all the evidence upon the theory that the witnesses for the defendant simply had not known of the facts that were shown by the evidence for the plaintiff. Compare *Lokey* v. *Davis*, 194 *Ga.* 175 (21 S. E. 2d, 69). We find no reason for reversing the judgment. See generally in this connection: *Thornton* v. *Skelton*, 149 *Ga.* 93 (99 S. E. 299); *Bracewell* v. *Cook*, 192 *Ga.* 678 (16 S. E. 2d, 432); *Ogletree* v. *Atkinson*, 195 *Ga.* 32 (22 S. E. 2d, 783); *Davis* v. *Stark*, 198 *Ga.* 223 (31 S. E. 2d, 592); *Elder* v. *Stark*, 200 *Ga.* 452 (37 S. E. 2d, 598); *Foster* v. *Carrollton*, 68 *Ga. App.* 796 (24 S. E. 2d, 143).

*Judgment affirmed. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case.*